Brown vs. Swineford.

*By the Court.*—The judgment is affirmed, with costs.

RYAN, C. J., and LYON, J., took no part.

BROWN VS. SWINEFORD.

PUNITIVE DAMAGES: *(1) Not barred by criminal punishment of the tort. (2) How affected by proof of provocation.*

PRACTICE: ATTORNEY: REVERSAL OF JUDGMENT. *(3) Effect of waiving opening argument. (4) Reversal for arguing upon facts not in evidence. (5) Exposure of witness's person at trial.*

1. An award of punitive damages for a tort which has been punished as a crime, is not in violation of the constitutional provision that no person for the same offense shall be twice put in jeopardy of punishment; and the rule allowing such damages should not now be abrogated or modified in this state, except by legislation.

2. Provocation of an assault, though not sufficient for justification, may go to exclude exemplary damages.

3. A waiver of the opening argument to the jury by plaintiff's counsel, if it leaves him the closing argument at all, confines it to a strict reply; but *quære*, whether a mere violation of this rule, excepted to, would be sufficient to reverse a judgment.

4. If counsel, against objection, persevere in arguing to the jury upon pertinent facts not before the jury, or appealing to prejudices foreign to the case in evidence, this, on exceptions duly taken, may be good ground for a new trial, or for a reversal; and the judgment herein is reversed on such grounds.

5. Indecent exposure of the person of a party (who is also a witness), not to be allowed at the trial.

APPEAL from the Circuit Court for *Monroe* County.

Action for an assault and battery. It appeared on the trial that the defendant had been prosecuted criminally, and fined, for the assault and battery here charged.

The court instructed the jury that in assessing damages they might allow, among other things, " reasonable damages for any loss of health, or bodily or mental suffering, caused by the

Brown vs. Swineford.

personal injury inflicted, *and also, if the wrong was inflicted wantonly or maliciously, for the personal indignity and insult to the plaintiff by the assault, for the public exposure and contumely, and for injury to his feelings.*" It then further charged, that, "if the injury was inflicted by defendant upon the person of the plaintiff under circumstances of aggravation, insult or cruelty, with vindictiveness, wantonness or malice on defendant's part," the jury were authorized "*to impose damages over and above those heretofore indicated* (which are denominated actual or compensatory damages), *as a punishment to defendant, and as a warning and example for himself and others.*" It then added: "In respect to damages for injury to feelings on account of the insult, public exposure and chastisement, the indignity and contumely attending the assault, *as well as those damages which the jury may allow in their discretion if they find the injury was inflicted maliciously by the defendant,* those may be mitigated, and even wholly defeated, by proof of malicious or provoking language or conduct upon the part of the plaintiff, immediately previous to the assault."

Other matters stated in the bill of exceptions, and relied upon as error, will sufficiently appear from the opinion.

Verdict for the plaintiff, for $750; new trial denied; and defendant appealed from a judgment on the verdict.

For the appellant, a brief was filed by *C. C. Remington*, as attorney, with *Vilas & Bryant*, of counsel, and the cause was argued orally by *W. F. Vilas.* To the point that a judgment will be reversed for persistent comment by counsel, after objection, upon facts not in evidence, they cited *Tucker v. Henniker*, 41 N. H., 317, 322 et seq.; *Rolfe v. Rumford*, 66 Me., 564; *Gould v. Moore*, 40 N. Y. Sup. Ct., 387; *Koelges v. Ins. Co.*, 57 N. Y., 638; *Fry v. Bennett*, 3 Bosw., 200; *Martin v. Orndorff*, 22 Iowa, 504; *Ferguson v. State*, 49 Ind., 33; *Fletcher v. State*, id., 124; *St. L. & S. E. R. R. Co. v. Myrtle*, 51 id., 567; *Read v. State*, 2 id., 438; *Mitchum v. State*, 11 Ga., 633;

*Bulloch v. Smith*, 15 id., 395; *Dickerson v. Burke*, 25 id., 225; *Hoxie v. Home Ins. Co.*, 33 Conn., 471.   As to the allowance of *punitory* damages, they cited Const. of Wis., art. I, sec. 8 (" No person, for the same offense, shall be put twice in jeopardy of *punishment* " ); and upon the general subject of strictly punitory damages, they cited *Austin v. Wilson*, 4 Cush., 273; *Daily Post Co. v. McArthur*, 16 Mich., 447; *Johnson v. McKee*, 27 id., 471; *Hendrickson v. Kingsbury*, 21 Iowa, 379; *Tuber v. Hutson*, 5 Ind., 322; *Butler v. Mercer*, 14 id., 479; *Nossaman v. Rickert*, 18 id., 350; *Humphries v. Johnson*, 20 id., 190; *Chiles v. Drake*, 2 Metc. (Ky.), 146; *Jacks v. Bell*, 3 Carr. & P., 316.

For the respondent, a brief was filed by *Gill, Bashford & Spilde*, and the cause was argued orally by *Mr. Gill* and *Mr. Bashford*.   They contended, among other things, 1. That the question whether punitory damages could be recovered in the action although the act of defendant had been punished as a criminal offense, was not properly raised by the record; but, if raised, was no longer an open one in this state.   *McWilliams v. Bragg*, 3 Wis., 424; *Birchard v. Booth*, 4 id., 67; *Barnes v. Martin*, 15 id., 240; *Hooker v. Newton*, 24 id., 292; *Klopfer v. Bromme*, 26 id., 372; *Hamlin v. Spaulding*, 27 id., 360; *Wilson v. Young*, 31 id., 574; *Craker v. Railway Co.*, 36 id., 657; *Bass v. Railway Co.*, 42 id., 654.   As to the doctrine elsewhere, see Sedgw. on Dam. (6th ed.), 569, and note; *Day v. Woodworth*, 13 How., U. S., 363; *Cook v. Ellis*, 6 Hill, 466; *Hendrickson v. Kingsbury*, 21 Iowa, 380; *Ward v. Ward*, 41 id., 686.   2. That plaintiff's counsel, at the trial, did not comment on any fact not proven or admitted, or fairly inferable from the evidence; but that, if the fact were otherwise, it would not be ground of reversal here, the circuit court having in its discretion refused a new trial on that ground (Hilliard on N. T., 225, §§ 40, 45; *Thompson v. Barkley*, 27 Pa. St., 263; *Larkins v. Tarter*, 3 Sneed, 681; *Fry v. Bennett*, 3 Bosw., 200, 243; *S. C.*, 28 N. Y., 331–

Brown vs. Swineford.

2; *Wightman v. Providence*, 1 Cliff., 524); and that especially a reversal would not be granted on that ground where no record was kept of counsel's remarks; where the jury were expressly charged to disregard all facts not in evidence; and where there was no evidence that the verdict was affected by them. The same rule applies as in the case of the admission of improper evidence, as to which see *Remington v. Bailey*, 13 Wis., 332; *Saveland v. Green*, 40 id., 431, 444; *Caswell v. Railway Co.*, 42 id., 193. Counsel further argued that the due administration of justice requires the largest freedom of speech in the trial of causes, and that an occasional abuse of such freedom would be far less injurious than the restrictive rule claimed by appellant's counsel.

RYAN, C. J. The court would be wanting in self-respect, to decide this appeal without some word of censure for an indecency committed on the trial. During his examination as a witness, the respondent was permitted, without apparent objection of court or counsel, to uncover and exhibit to the jury his organs of generation. No such indecency is ever necessary, or should be tolerated in court. If the condition of any private part of the body of any party, male or female, is material on any trial, it should be privately examined by experts out of court, and expert testimony be given of it. Such an exposure as was made in this case, if made without leave of the court, might well be punished as a contempt; made with the sanction of the court, it is none the less improper and indecent, well calculated to disgrace the administration of justice, and to bring it into ridicule, if not into contempt. It is hoped that this court may never have another occasion for such censure.

I. A very able and solemn appeal was made to the court, to exclude the rule of exemplary damages in actions of tort, when the tort is punishable as a crime. The position was founded upon the clause in sec. 8, art. II of the constitution,

that no person, for the same offense, shall be twice put in jeopardy of punishment. It was argued, with very great force, that punitory damages given in the right of the public, in addition to full compensation of the sufferer by an act which is at once a tort and a crime, as in this case and in *Mc Williams v. Bragg*, 3 Wis., 424, and *Birchard v. Booth*, 4 id., 67, subjects the tortfeasor to punishment twice for the same offense. And it might have been added that, while the statute limits the pecuniary fine upon criminal prosecution for such an act, there is but vague limit to the punitory damages which a jury may find in a civil action. It certainly appears to be an incongruity, that one may be punished by the public for crime, upon criminal prosecution, by fine limited by statute, and again punished in favor of the sufferer, but in right of the public, for the same act, by punitory damages, with little limit but the discretion of a jury. This is but another illustration of what appears to be the incongruity of the entire rule of exemplary damages.

On this subject the writer adheres to what he said in *Bass v. Railway Co.*, 42 Wis., 672, confirmed by comments which he has seen upon it in legal periodicals. And he believes that his views of punitory damages, as an original question, are sanctioned by every present member of the court.

The particular view of the rule now insisted on was overlooked in *Mc.Williams v. Bragg*, *Birchard v. Booth*, and all the cases in this court in which the action was against the actual tortfeasor, subject to criminal conviction for the act. In *Railroad Co. v. Finney*, 10 Wis., 388; *Bass v. Railway Co.*, 36 id., 450, *S. C.*, 42 id., 654; *Craker v. Railway Co.*, 36 id., 657, and other cases where the action was against the master for the tort of the servant, it could not well arise. So far, therefore, it is a question of first impression here; and the court congratulates itself that it arises first in a case thoroughly discussed by able counsel on both sides.

It would have been no subject of regret to the court, if the

obligation of the constitution called upon it to abridge the application of the rule. But the court is unable to hold that the constitutional provision has any controlling bearing on the question. The constitution only reënacts what was the general, if not literally universal, rule at common law. See authorities collected in 1 Bish. Crim. Law, §§ 980–987. The word *jeopardy* is therefore used in the constitution in its defined, technical sense at the common law. And in this use it is applied only to strictly criminal prosecutions by indictment, information or otherwise. *Commonwealth v. Cook*, 6 Ser. & R., 577; *State v. McKee*, 1 Bailey, 651; *People v. Goodwin*, 18 Johns., 187; *U. S. v. Gibert*, 2 Sumn., 19; *U. S. v. Haskell*, 4 Wash., 402. See also *State v. Crane*, 4 Wis., 400. The cases generally hold that the rule in criminal cases, that one shall not twice be put in jeopardy, implies more than the bar of a judgment to an action for the same cause. But no case is known where a conviction upon an indictment has been held a bar to a civil action for damages growing out of the same act; *a fortiori*, none in which a recovery in a civil action has been held a bar to an indictment for the same act. And the whole purview of section 8 plainly shows that the putting in jeopardy prohibited is confined to criminal prosecutions. Indeed, this is manifest in the clause itself, which is confined to the same *offense*, used in the same sense as *criminal offense* in the first clause of the section. Of course the same act may be an offense (in the sense of crime) against the state, and an offense (in the sense of tort) against a private person. It is manifest that judgment for the one is not a bar to the other. And it might be difficult, in principle, to hold a criminal conviction as a bar to the recovery of punitory damages in a civil action, and not a bar to the recovery of compensatory damages; not a bar to any civil action. See *Jacks v. Bell*, 3 C. & P., 316.

The radical difficulty in the position of counsel appears to be, that judgment for the criminal offense is for the offense

against the public; judgment for the tort is for the offense against the private sufferer; that though punitory damages go in the right of the public for example, they do not go by way of public punishment, but by way of private damages; for the act as a tort and not as a crime, to the private sufferer and not to the state. Though they are allowed beyond compensation of the private sufferer, they still go to him for himself, as damages allowed to him by law in addition to his actual damages; like the double and treble damages sometimes allowed by statute. Considered as strictly punitory, the damages are for the punishment of the private tort, not of the public crime. It is unfortunate that damages should ever have been suffered to go beyond actual compensation, under a liberal rule like that given in *Craker v. Railway Co.*, 36 Wis., 657. But the rule so long and so generally established is a sin against sound judicial principle, not against the constitution.

And so the constitutional provision works no exception to the rule of exemplary damages, although it adds great force to the weight of argument against the soundness of the rule generally.

A different view appears to prevail elsewhere. *Fay v. Parker*, 53 N. H., 342. This is certainly, as an editor of Professor Greenleaf's work remarks, a very elaborate and able discussion of the subject; it is a very elaborate and able criticism of the cases sustaining the rule of punitory damages, and argument against the rule in any case. To the same effect are *Taber v. Hutson*, 5 Ind., 322; *Butler v. Mercer*, 14 id., 479; *Nossaman v. Rickert*, 18 id., 350; *Humphries v. Johnson*, 20 id., 190; *Austin v. Wilson*, 4 Cush., 275. But these cases fail to satisfy this court that it is wrong in the construction here given to the constitutional provision in question. And *Chiles v. Drake*, 2 Metc. (Ky.), 146, and *Hendrickson v. Kinysbury*, 21 Iowa, 379, well considered cases, in very satis-

Brown vs. Swineford.

factory discussions, come to the same conclusion as this court, and strongly confirm it.

The argument and consideration of this case have gone to confirm the present members of this court in their disapprobation of the rule of exemplary damages which they have inherited. But they fear to complicate the difficulties and incongruities of the rule by the exception urged; and do not feel at liberty to change or modify the rule at so late a day, against the general current of authority elsewhere. As suggested in *Bass v. Railway Co.*, if a change should now be made, it lies with the legislature, rather than the court, to abrogate or modify a rule running through the entire body of the reports of this state. As was once well observed, courts cannot be always inquiring into the original justice or wisdom of rules long established and accepted.

After all, the distinction between compensatory damages for wounded feeling, sense of insult, etc., and punitory damages, is sometimes very vague, as may be seen by comparison of *Wilson v. Young*, 31 Wis., 574, and *Craker v. Railway Co.*, 36 id., 657. And the vagueness of this distinction, in practice as well as in theory, is illustrated by the three reports of *Bass v. Railway Co.*, 36 Wis., 450; 39 id., 636; 42 id., 654. The case was three times tried, in different counties; twice upon instructions allowing exemplary damages, and once upon instructions disallowing them. And yet the verdict on each trial was for the same sum. Apparently, what was allowed on two trials for exemplary damages, was allowed on the third trial for compensatory damages for wounded feelings, etc.

The charge of the court below in this case, on the subject of exemplary damages, was correct, as far as it goes; though it can hardly be held sufficiently explicit in such a case, in view of some of the evidence appearing in the bill of exceptions. In *Moreley v. Dunbar*, 24 Wis., 183, it was held, that provocation of an assault, although not sufficient for justifi-

cation, might mitigate even compensatory damages; clearly implying that it might exclude exemplary damages. In *Wilson v. Young*, 31 Wis., 574, it was held by a majority of the court, that provocation could go to reduce compensatory damages only so far as these should be given for injury to the feelings. Dixon, C. J., adhered to the rule in *Moreley v. Dunbar*, that provocation, in proper cases, might go to reduce all compensatory damages. Whichever of these cases should be followed, it is quite clear that both hold that provocation may go to exclude exemplary damages. In such a case, it is malice against malice; the malice of the plaintiff precluding him from recovery for the malice of the defendant, provoked by his own. See *Johnson v. McKee*, 27 Mich., 471.

II. Following for once a bad practice, the learned counsel for the respondent, in closing the argument of the case to the jury, forgot himself so far as to exceed the limits of professional freedom of discussion.

It appears by the bill of exceptions, that he waived the opening argument to the jury. A very strict rule might hold this to give the other side the right to close. If such a waiver should still leave the closing argument to the plaintiff, it certainly confined it to a strict reply to the defendant's argument, excluding general discussion of the case. The sole object of all argument is the elucidation of the truth, greatly aided in matters of fact, as well as in matters of law, by full and fair forensic discussion. And this is always imperiled when either party, by any practice, is able to present his views of the case to the jury without opportunity of the other to comment on them. And if the party entitled to the opening argument, relying on the strength of his case without discussion, waive the right to open, he waives the right to discuss the case generally, and should not be permitted to do so out of his order, and after the mouth of the other party is closed. His close, if permitted to close the argument, should be limited to comments on the argument of the other side. This is essential

to the fairness and usefulness of juridical discussion at the bar.

It sufficiently appears in the present case, that the learned counsel for the plaintiff did not properly confine his closing argument to a reply. It is very doubtful if that alone would be error sufficient to reverse the judgment, if an exception had been taken by the appellant, which does not appear to be the case. But the learned counsel went beyond the legitimate scope of all argument, by stating and commenting on facts not in evidence. .

In actions of tort, calling for exemplary damages, evidence of the pecuniary ability of the defendant to pay them is admissible. *Birchard v. Booth, supra; Barnes v. Martin*, 15 Wis., 240. This appears to be, as Mr. Justice COLE remarks in *Birchard v. Booth*, a fair corollary of the rule of exemplary damages. Perhaps the corollary is not better founded in principle than the rule; but the court takes them as it finds them established.

· It appeared in evidence, that the appellant was an officer of a railroad company, and that the *locus in quo* was within depot grounds of the company. No evidence appears to have been given of the ability of the appellant to pay exemplary damages. The learned counsel appears to have undertaken to supply this want of evidence, by commenting to the jury upon the appellant's connection with the railroad company, and the wealth and power of the company as a great corporation, and the defendant's ability, from his connection with it, to pay any judgment which might be rendered against him. The bill of exceptions states, that " no record was kept of these remarks, and the court is unable to state more specifically the substance of the language used." But enough appears to show, not only that the learned counsel commented on facts not in evidence, but in effect testified to the facts himself. It was in effect telling the jury that the appellant's position with the corporation gave him the ability to pay large damages,

and nearly — if not quite — that they might measure the damages by the wealth of the railroad company itself.

Amongst other evidence of the appellant's ability to pay, it might undoubtedly have been shown that he received large emoluments from his position in the railroad company; and possibly that the railroad company had assumed the appellant's tort and the payment of the judgment. And it was not the duty or the right of counsel, was not within the proper scope of professional discussion, to assume the facts as proven, or to state them to the jury as existing; founding his argument *pro tanto* upon them. And this was the more marked in the present case, because it was made for the first time in what should have been a mere reply; and still more, because the court below had already admonished counsel to confine himself to the evidence, and not to go outside of the record.

The appellant took his exceptions; and his counsel now supports it by numerous cases, some of which are — as far as they go — admirable discussions of professional ethics; and all of which are well worth the attention of the bar. All of them support the rule now adopted by this court, that it is error sufficient to reverse a judgment, for counsel, against objection, to state facts pertinent to the issue and not in evidence, or to assume *arguendo* such facts to be in the case when they are not. Some of the cases go further, and reverse judgments for imputation by counsel of facts not pertinent to the issue, but calculated to prejudice the case. *Tucker v. Henniker*, 41 N. H., 317; *State v. Smith*, 75 N. C., 306; *Ferguson v. State*, 49 Ind., 33; *Hennies v. Vogel*, Sup. Court Ill., 7 Cent. L. J., 18.

There are cases in conflict with those which support this rule. But, in the judgment of this court, the rule is supported by the weight of authority and by principle.

Doubtless the circuit court can, as it did in this case, charge the jury to disregard all statements of fact not in evidence. But it is not so certain that a jury will do so. Verdicts are

Brown vs. Swineford.

too often found against evidence and without evidence, to warrant so great a reliance on the discrimination of juries. And, without notes of the evidence, it may be often difficult for juries to discriminate between the statements of fact by counsel, following the evidence and outside of it. It is sufficient that the extra-professional statements of counsel may gravely prejudice the jury and affect the verdict.

The profession of the law is instituted for the administration of justice. The duties of the bench and bar differ in kind, not in purpose. The duty of both alike is to establish the truth and to apply the law to it. It is essential to the proper administration of justice, frail and uncertain at the best, that all that can be said for each party, in the determination of fact and law, should be heard. Forensic strife is but a method, and a mighty one, to ascertain the truth and the law governing the truth. It is the duty of counsel to make the most of the case which his client is able to give him; but counsel is out of his duty and his right, and outside of the principle and object of his profession, when he travels out of his client's case and assumes to supply its deficiencies. Therefore is it that the nice sense of the profession regards with such distrust and aversion the testimony of a lawyer in favor of his client. It is the duty and right of counsel to indulge in all fair argument in favor of the right of his client; but he is outside of his duty and his right when he appeals to prejudice irrelevant to the case. Properly, prejudice has no more sanction at the bar than on the bench. But an advocate may make himself the *alter ego* of his client, and indulge in prejudice in his favor. He may even share his client's prejudices against his adversary, as far as they rest on the facts in his case. But he has neither duty nor right to appeal to prejudices, just or unjust, against his adversary, *dehors* the very case he has to try. The very fullest freedom of speech within the duty of his profession should be accorded to counsel; but it is license, not freedom of speech, to travel out of the record,

basing his argument on facts not appearing, and appealing to prejudices irrelevant to the case and outside of the proof. It may sometimes be a very difficult and delicate duty to confine counsel to a legitimate course of argument. But, like other difficult and delicate duties, it must be performed by those upon whom the law imposes it. It is the duty of the circuit courts, in jury trials, to interfere in all proper cases of their own motion. This is due to truth and justice. And if counsel persevere in arguing upon pertinent facts not before the jury, or appealing to prejudices foreign to the case in evidence, exception may be taken by the other side, which may be good ground for a new trial, or for a reversal in this court.

It is with regret that the court is obliged to hold that both appear to have been done in this case. It was no fair inference for argument that, because the appellant was the servant of a wealthy railroad company, he himself was wealthy; or that the jury might take into consideration, in assessing damages, the power, wealth and influence of the corporation. Popular prejudice against great corporations is, perhaps, a sufficient difficulty in the way of the administration of justice, in cases in which such corporations themselves are parties; it is intolerable that it should be extended to their servants. For all that appears in this case, the appellant may be as poor as Job in his downfall. His wealth, if he had it, was legitimate subject of evidence, not legitimate subject of argument, without evidence. And his fortune or misfortune in being the servant of a corporation was legitimate ground for no appeal against him in a court of justice.

It is to the honor of the bar that this is the first time that this question has come before this court. Yet is it not to be ignored that the practice here condemned has sometimes been indulged in. And it is, perhaps, not to be regretted that the question has first come here in the case of an eminent member of the bar; a gentleman of high character, personal and professional, known to every member of this court; whose

professional ability needs no adventitious aid, and who probably fell into this error casually and inadvertently. His professional standing shields him from personal censure, while it will give emphasis to the rule laid down.

*By the Court.* — The judgment is reversed, and the cause remanded to the court below for a new trial.