BAKER vs. THE CITY OF MADISON.

*November 28 — December 12, 1882.*

CITIES: STREETS.    *What constitutes defect: Instructions to jury.*

1. On a declivity in a city several streets intersected each other and were paved and worked in accordance with an established grade, not in itself defective. A cross-walk and a stone gutter eight feet wide, near and parallel to each other, crossed one of such streets (a side street), at an angle of a little less than a right angle. For a space of about thirty feet in the middle of such street the depth of the gutter in the middle was from five to six inches; outside of that space the depth was from eight to nine inches. The gutter was otherwise properly constructed and was not out of repair. *Held*, that there was no such defect in the street as would render the city liable in an action for personal injuries received at that point.

2. An instruction requested by the defendant city, to the effect that it is impracticable to bring all streets and walks to a dead level, and that such a slight ascent as one inch or so to a foot in a cross-walk or a gutter crossing a street must, of necessity, sometimes occur, and will not constitute a [defect, should, in this case, have been given.

APPEAL from the Circuit Court for *Jefferson* County.

The case is thus stated by Mr. Justice CASSODAY:

"This is an action to recover damages for personal injury received by reason of an alleged defect in the street at the intersection of Butler, King, and Wilson streets, in the de-

fendant city.   Butler street runs into Wilson street from the northwest, and is at right angles with it.   The latter runs southwest from the Northwestern depot in the city, and is the street running parallel with and nearest to Third lake. King street runs from the east corner of Capitol park directly east into Butler and Wilson streets, striking at the junction of those streets, and at an angle to each of about forty-five degrees, and is the main traveled street to that depot.   There was a gradual descent in King street, and its continuation, Wilson street, of about twenty-eight feet in eighteen or nineteen rods, or about eighteen or nineteen inches in one rod, and the surface of the street where King street passes into Wilson is substantially uniform.   The city surveyor, Nader, testified, in effect, that these three streets 'were graded so as to conform very nearly to the natural form of the ground, so as to avoid labor.  King street is very straight. Butler street is almost in the natural condition of the ground. It begins almost on a level at Main street, and gradually grows steeper, until say ten rods from Wilson street, where it is about the steepest place, and then it flattens a little as it approaches this crossing.   The descent of Butler street is about sixteen feet in sixteen rods, or one foot to the rod. The figures on the map indicate the elevation.   Butler street is higher on the west side toward King street than on the east, and it conforms somewhat to the slope of King street. The cross-walk is constructed of plank spiked onto substantial stringers — of two planks,— and these planks are separated by about a foot, and are paved in between with cobble-stones, and on the north side, also, the approach to the cross-walk is paved so as to protect the planks from abrasion; so on both sides of these two planks there is a pavement of stone.   My diagram does not show how far the cross-walk is above But-' ler street; there is some slight elevation of the cross-walk above Butler street amounting to a few inches; on the other side is this gutter,— a paved stone gutter about eight feet

wide, which is constructed of cobble-stone, and partly of quarry-stone, substantially bedded into the earth, and the grade made to conform to the grade of the street as near as possible, excepting at the lower end, where it conforms to Wilson street. At that point there is an increase of the grade of the street, in order to depress the grade of the gutter sufficient to pass the water under the apron of the walk, being about four and one half feet wide across Wilson street. The traveled part of Butler street over the cross-walk and gutter is fully thirty feet wide. There is quite a face to the gutter crossing Butler street; as you approach it from Main street you can see more or less of it. The gutter being about eight feet wide, the center is about four feet from the cross-walk, so as to show two faces as you approach it. The point where the sidewalk and gutter on the north side of King street strike the southwest line of Butler street, they both deflect from a straight line with King street to the northeast, say twenty degrees or more, so as to bring the walk and gutter more nearly at right angles with Butler street.'

" The depth of the gutter in the deepest places across Butler street was taken at intervals of every five feet for a distance of forty-five feet, which included thirty feet of traveled road and the untraveled space on either side of it. These measurements were taken at a distance of from four to five feet from the cross-walk, and the greatest depth below the cross-walk at the extreme limit of forty-five feet was about nine inches; approaching five feet nearer the center of Butler street on either side, and such depth was eight inches on the upper side and six and one half on the lower side; approaching still five feet nearer the center of Butler street on either side, and such depth was six inches on the upper side and five and one half on the lower side; approaching still five feet nearer the center of Butler street on either side, and such depth was five and one half inches on the upper side and five inches on the lower side; approaching still five feet

Baker vs. The City of Madison.

nearer the center of Butler street on either side, and such depth was five inches upon the upper side and seven inches on the lower side, and such last measurements were within five feet of each other.

"The surveys, maps, measurements, and photograph, all were in evidence, by consent of the respective parties, and these and the other evidence verify the statements as to the condition of the streets. The plaintiff testified, in effect, that he was twenty-six years of age, and that on the afternoon of December 12, 1879, with a span of horses and wagon he brought a load of hay to the city, had it weighed, and found there was in the load about 1,800 pounds, firmly bound with a binding pole and a rope on the front end, and two ropes on the hind end of the pole, fastened on each side of the rack; that he was on the load driving, with gloves on,— it was a raw, cold day — not very cold, but it was quite cold,— and turned and drove directly down on Butler street and then turned to the left, going down towards the East Madison depot; it was in that curve, and the wagon was a little cramped to the left, and when the upper wheel of the wagon struck the gutter the other fore wheel was not quite in, and then he geed the team in order to straighten the wagon; that before he got to the gutter he could see there was a high elevation,— cross-walk,— and when his team got on that he saw there was a deep gutter there, and partially raised up on the load,— thinks on his feet, so he could see the gutter; that he did not know how wide the cross-walk was,— presumed three or four feet. When the team started into the gutter he raised up in order to be more cautious, and when the wagon started into the gutter he pulled up in order to let the wagon down easy. The forward wheels went into the gutter with a little jog, a little down hill, and then the wagon partially stopped, but the team went on and straightened out the tugs when he turned them to the gee, or up the hill, in order to get the wagon straight, to get the

two hind wheels in the gutter at the same time, but the wagon was not cramped. When so turned the horses started, but did not go more than two or three feet when the load of hay, with the plaintiff on the top, and the wagon went over on the lower or near side, and partially in the opposite direction from that in which the team was going, and the plaintiff struck the ground a little more than the length of his body from the cross-walk of Wilson street from the lower side of Butler street, and on the upper side of it, and was badly injured. He further testified that when he got onto the cross-walk he was driving in the traveled track in Butler street. He was a little bit below the center of the street, but very little. The upper part of the wagon was not below the center, and the upper side of the wheel was probably in the center of the street, but the majority of the load was a little below the center, in the traveled track. He was in the traveled track, but below the center of the street. He drove in the tracks that were newly made; it was the width of a wagon at that time,— probably a little more. The track was outside of the wheels eighteen inches or two feet on either side, and he was in that track. The upper wheel was in the upper beaten track and the lower wheel in the lower beaten track, a little below the center of the street. The traveled track did not go square across the gutter; it angled a little down the street.

"The first trial was in Madison, and the judge and jury viewed the *locus in quo*, and a verdict rendered for the plaintiff thereon was set aside by the court, whereupon the venue was changed to Jefferson county, where, upon a second trial, the plaintiff obtained another verdict, and from the judgment entered thereon this appeal is brought."

*R. M. Bashford*, as attorney, and *J. C. Gregory*, of counsel, for the appellant.

For the respondent there was a brief by *Welch & Botkin*, and oral argument by *Mr. Botkin*.

CASSODAY, J. The plaintiff was severely injured. He obtained a verdict and judgment in his favor. The evidence in support of it must, therefore, receive the most favorable construction it will legitimately bear, including all reasonable inferences from it. Giving to it such construction, can we say there was evidence sufficient to sustain a verdict that the street at the time and place in question was defective or out of repair? There seems to be no material conflict in the evidence upon this point. It is true, Col. Botkin testifies, in effect, that he took a plank not over twelve feet long and as straight as he could find, and laid it on the top of this crosswalk and then across the gutter onto the street on the opposite side, where he judged the wagon went,— a little below the center — east of the center of the street,— four or five feet below the center; and that from the deepest place to the bottom of the plank where the lower wheel went it was eleven inches, and that from the bottom of the plank to the bottom of the depression where the upper wheel went it was seven and a half inches. That does not undertake to give the depression in the gutter itself and nothing more, and hence is not necessarily in conflict with the actual measurements in detail made by the surveyor. Such measurements showed the actual depressions in the gutter, which was but eight feet wide. The only defect complained of, after all, is the depression of from five to nine inches deep near the center of this gutter eight feet wide, constructed, as stated, with the crosswalk near and parallel with it. There is no complaint that it was not made with proper material, nor that the work was not well done. Of course, so many streets coming together, where the ground is so descending, necessarily required drains of some kind to carry away the surface water accumulating thereon in certain seasons of the year; not to have constructed any would have been a clear case of neglect, which might at times have rendered travel unsafe. The evidence

fails to indicate any safer method of drainage, and we are not aware of any.

These different streets coming together in that way necessarily had to conform more or less to each other to render passage ordinarily safe. King street and its continuation, Wilson street, being the main traveled streets to the depot, and out of the city in that direction, necessarily had the preference in the grade, if any was to be made, especially as Butler street was a mere side street, running along the side of the descent. The grade of the streets, the gutter, and the cross-walk seem to have been established with reference to each other, and constructed at considerable cost. Such grade had not been materially changed since it was made. It can hardly be claimed that it had got out of repair after construction. To hold that its condition, as constructed, tended to prove the existence of a defect, is to hold that there was something about it from which the jury were authorized to infer a want of skill, either in establishing the grade, or in the plan or method of construction. If there was anything in the case which warranted such an inference, then, of course, the case was properly left to the jury. But my brethren are clearly of the opinion that there is not, and I am inclined to acquiesce in their judgment. Negligence must be proved by the plaintiff, and is not to be inferred in the absence of evidence. See opinion of Mr. Justice Orton in *Sorenson v. Menasha Paper Co., ante,* p. 338.

Certainly it would be difficult to justify a recovery upon any other theory than that the jury are in all cases the exclusive judges as to whether the grade established, and the construction of streets, cross-walks, and gutters in accordance therewith, are proper and suitable for travel. Ordinarily, in such cases, there is enough to carry the case to a jury; for even though the physical facts may not be disputed, yet there is usually something in the case from which conflicting infer-

ences may fairly be drawn, requiring the intervention of a jury. But we are to remember that, as a condition precedent to any recovery, there must be what may fairly be regarded as a defect. It may be that the acute angle formed by the cross-walk and gutter with Butler street, together with the depression in the gutter, furnishes a mere shadow of testimony from which a defect might be inferred by one not taking into account the natural condition of the surface of the ground, and the necessary connection of Butler, King, and Wilson streets; but when these things are taken into account, and the further fact that the cross-walk and gutter were put there in the condition stated in order to bring these several streets, and especially the two having the much greater travel, into good condition, in pursuance of an established grade, and thus anticipating and avoiding defects which might otherwise have been especially inconvenient, if not dangerous, in certain seasons of the year, the inference of any defect seems to disappear.

The question was raised upon the argument as to how this load of hay could have been tipped over as it was, assuming that the plaintiff was not guilty of contributory negligence, for the evidence fails to show; but no one attempted even to conjecture how it could have happened.

We must, therefore, hold that where, on a declivity in a city, several streets intersect each other, and are paved and worked in accordance with an established grade, which does not appear and is not shown by evidence to be defective, the mere fact that a cross-walk and stone gutter eight feet wide parallel with it, otherwise properly constructed and not out of repair, crosses one of the streets (a side street) upon an angle a little less than a right angle, and the middle of the gutter for a space of about thirty feet in the middle of such street only has a depression of from five to six inches, and outside of that space only a depression of from eight to nine

inches, the same does not constitute such a defect as to render such city liable.

Besides, we think the court should have given the following instruction requested by the defendant: "It is evident that in a place like the city of Madison it is quite impracticable to bring all streets and walks to a dead level, and therefore such a slight ascent as one inch or so to a foot in a cross-walk or gutter crossing a street, will, of necessity, sometimes have to exist; and it would be establishing a rule quite too strict to say that such an ascent in the cross-walk or gutter constitutes a defect." But it is unnecessary to continue the discussion further.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.