BAKER VS. THE CITY OF MADISON.

*December 20, 1884 — January 13, 1885.*

PRACTICE: EVIDENCE: DAMAGES. *(1) New trial after reversal: New evidence: Court and jury. (2) Opinions as to effect of personal injuries. (3) Opinions as to condition of highway. (4) Answer responsive to question. (5) Cross-examination: Rebuilding of gutter after accident. (6, 7) Reversal of judgment: Improper remarks of counsel at trial. (9) Excessive damages: Successive verdicts. (10) Remission of excess: Supreme court. (11) Stare decisis in matters of practice. · (12) Costs in supreme court: Excess in printing.*

| 62 | 137 |
| 74 | 17 |
| 74 | 259 |
| 62 | 137 |
| 85 | 457 |
| 62 | 137 |
| 88 | 324 |
| 62 | 137 |
| e91 | 636 |
| 62 | 137 |
| 101 | 616 |
| 62 | 137 |
| 103 | 590 |
| .104 | 331 |
| †104 | 335 |
| 62 | 137 |
| d111 | 12361 |
| 62 | 137 |
| 115 | s515 |

1. Although in an action for an injury alleged to have been caused by a defect in a gutter this court had reversed a judgment for the plaintiff on the ground that the evidence showed conclusively that the gutter was in proper repair, yet upon a new trial further testimony having been introduced which, if true, showed an insufficiency in the gutter, the question of the sufficiency thereof was properly submitted to the jury.

2. One who had employed the plaintiff in an action for personal injuries, both before and after he received such injuries, might properly testify that those injuries seriously affected his ability to do some kinds of work and incapacitated him from traveling much. Such testimony is not the expression of an opinion.

3. A jury must determine the question whether a highway or gutter is safe or unsafe — in a good or bad condition — from the evidence of its condition and not from the opinions of any one, whether an expert or not.

4. A witness having stated facts showing that a gutter was in good condition at the time of an accident, was asked to compare its condition at that time, as to unevenness and depressions, and its condition at a subsequent time when he made a survey thereof. He answered: "When I made the survey the gutter, in places, was very uneven, and stone displaced out of line,— some broken and crushed,— and very much out of repair." *Held*, that the answer was responsive, and it was not error to deny a motion by the counsel asking the question to strike out the words "and very much out of repair."

5. On cross-examination the same witness was asked if the gutter had been rebuilt since the accident, and answered, "Partly." *Held*, that it was not error to permit such question and answer.

6. The rule that a judgment may be reversed because counsel persisted at the trial, against objection, in stating or in arguing upon pertinent facts not in evidence, or in appealing to prejudices foreign to the case in evidence, does not apply to statements made by an attorney while testifying as a witness, nor to the statement of impertinent facts which have been proved or may fairly be inferred from the evidence.

7. The consequences of an improper statement by counsel at the trial, tending to influence the jury, cannot be averted by his saying that he "takes it back."

8. The jury must find the facts in the case from the evidence before them on the trial and must take the law of the case from the judge presiding, and it is not error to refuse to permit counsel to read the opinion of the appellate court upon an appeal from the judgment rendered at a former trial.

9. In three successive trials of an action for personal injuries the plaintiff obtained verdicts of $3,000, $2,500, and $6,000, respectively, upon substantially the same evidence as to the extent of his injuries. *Held* that, in view of the first two verdicts, the damages awarded by the third are excessive, and the judgment thereon is reversed for that reason.

10. Where a judgment is reversed upon the sole ground that the damages awarded are excessive, this court may indicate the excess and allow it to be remitted and judgment entered for the balance. *Potter v. C. & N. W. R'y Co.* 22 Wis. 615, modified.

11. The maxim *stare decisis* has no application to mere matters of practice.

12. The printed case herein containing 170 pages of testimony in the form of question and answer, and the instructions and charge to the jury being inserted in the appellant's brief, in violation of Rule VIII, the clerk is directed on a retaxation of costs to disallow $100 from the bill as taxed, for excess of printing.

APPEAL from the Circuit Court for *Jefferson* County. The facts are sufficiently stated in the opinion.

For the appellant there was a brief by *R. M. Bashford,* and oral argument by *Mr. Bashford* and *Mr. J. C. Gregory.* They contended, *inter alia,* that the testimony of the plaintiff's employer as to the result of his injury in incapacitating him for work or travel, was inadmissible as being an opinion. *Ashland v. Marlborough,* 98 Mass. 48; *Luning v. State,* 2

Baker vs. The City of Madison.

Pin. 215; *Knoll v. State*, 55 Wis. 249; *Noonan v. State*, id. 258; *Neilson v. C., M. & N. W. R'y Co.* 58 id. 516; *Blair v. M. & P. du C. R. R. Co.* 20 id. 262. And since the error in admitting such testimony may have been prejudicial to the defendant, it necessarily works a reversal. *Kelley v. Schupp*, 60 Wis. 76. Evidence that the gutter was "in good condition," which was excluded by the court, was competent as being in relation to a matter of fact, and not an opinion. *Kelleher v. Keokuk*, 60 Iowa, 473. The damages awarded were excessive. It does not appear that the actual damage exceeded $1,500, and a comparison of this case with the other cases in this court in which the question has been considered shows that this verdict should be set aside. *Duffy v. C. & N. W. R'y Co.* 34 Wis. 188; *Goodno v. Oshkosh*, 28 id. 300; *Schmidt v. M. & St. P. R'y Co.* 23 id. 186; *Potter v. C. & N. W. R'y Co.* 22 id. 615; *Jaquish v. Ithaca*, 36 id. 108; *Bass v. C. & N. W. R'y Co.* id. 450; *S. C.* 39 id. 636; 42 id. 654; *Patten v. C. & N. W. R'y Co.* 32 id. 524; *Spicer v. C. & N. W. R'y Co.* 29 id. 580; *Karasich v. Hasbrouck*, 28 id. 569; *Weisenberg v. Appleton*, 26 id. 56; *Stewart v. Ripon*, 38 id. 584; *Houfe v. Fulton*, 34 id. 608; *Hammond v. Mukwa*, 40 id. 35; *Hall v. Fond du Lac*, 42 id. 274; *Benedict v. Fond du Lac*, 44 id. 495; *Schultz v. C., M. & St. P. R'y Co.* 48 id. 375; *Neanow v. Uttech*, 46 id. 581; *Delie v. C. & N. W. R'y Co.* 51 id. 400; *Berg v. C., M. & St. P. R'y Co.* 50 id. 419; *Blair v. M. & P. du C. R. R. Co.* 20 id. 254; *Wheeler v. Westport*, 30 id. 392; *Stilling v. Thorp*, 54 id. 528; *Kenworthy v. Ironton*, 41 id. 647; *Quaife v. C. & N. W. R'y Co.* 48 id. 513; *Stetler v. C. & N. W. R'y Co.* 49 id. 609; *Cummings v. Nat. Furnace Co.* 60 id. 603; *Wright v. Fort Howard*, id. 119.

For the respondent there were briefs by *Welch & Botkin*, and oral argument by *Mr. Botkin* and *Mr. H. M. Lewis*. They argued, among other things, that an appellate court will not disturb the verdict in cases of this kind, unless the

Baker vs. The City of Madison.

damages are flagrantly outrageous, or unless they are so excessive as to lead to the conclusion that the jury was actuated by passion, prejudice, or corruption. 3 Graham & W. on N. T. 1139; *Leeman v. Allen*, 2 Wils. 160; *Belair v. C. & N. W. R. Co.* 43 Iowa, 662; *Coffin v. Coffin*, 4 Mass. 1; *Walker v. Erie R'y Co.* 63 Barb. 260; *Birchard v. Booth*, 4 Wis., 67; *Schmidt v. M. & St. P. R'y Co.* 23 id. 186; *Bass v. C. & N. W. R'y Co.* 42 id. 654; *Schultz v. C., M. & St. P. R'y Co.* 48 id. 375. Where the injuries are shown to be permanent the verdict is seldom, if ever, disturbed; and a comparison of this case with others in which the verdicts were allowed to stand, shows that the damages awarded to this plaintiff were not excessive. *Deppe v. C., R. I. & P. R. R. Co.* 38 Iowa, 592; *Belair v. C. & N. W. R. Co.* 43 id. 663; *Chicago & A. R. R. Co. v. Murray*, 71 Ill. 601; *Rockwell v. Third Ave. R. R. Co.* 64 Barb. 438; *Collins v. Council Bluffs*, 32 Iowa, 324; *S. C.* 35 id. 432; *Walker v. Erie R'y Co.* 63 Barb. 260; *Duffy v. C. & N. W. R'y Co.* 34 Wis. 188; *Karasich v. Hasbrouck*, 28 id. 569; *Schultz v. C., M. & St. P. R'y Co.* 48 id. 375; *Schmidt v. M. &. St. P. R'y Co.* 23 id. 186; *Goodno v. Oshkosh*, 28 id. 300; *Bass v. C. & N. W. R'y Co.* 42 id. 654. Where there have been several verdicts for the plaintiff in a case like this, that fact will be sufficient ground for refusing to set aside the last one as excessive. *Shaw v. B. & C. R'y Co.* 8 Gray, 45.

Although in *Nudd v. Wells*, 11 Wis. 407, and *Potter v. C. & N. W. R'y Co.* 22 id. 615, this court refused to state what it considered the excess to be beyond the proper verdict and permit the plaintiff to remit such excess and have the judgment stand for the balance, yet in *Corcoran v. Harran*, 55 Wis. 120, it decided that the trial court might permit the plaintiff to remit the excess, etc. The opinion in that case leaves the question open as to the power of the appellate court to do the same as the trial court may do with the verdict in such case, and it only remains for this court to extend

Baker vs. The City of Madison.

to itself that privilege, to have the rule in this state pass through the same stages of development as in other states. The following cases, notwithstanding earlier cases in some of the states to the contrary, establish the rule that if the verdict in this class of cases is excessive the appellate court will give the plaintiff the option of remitting the excess, or having a new trial: *Belknap v. B. & M. R. R.* 49 N. H. 358; *Collins v. A. & S. R. R. Co.* 12 Barb. 492; *Clapp v. H. R. R. R. Co.* 19 id. 461; *Potter v. Thompson,* 22 id. 87; *Murray v. H. R. R. R. Co.* 47 id. 196 (affirmed 48 N. Y. 655); *McIntyre v. N. Y. C. R. R. Co.* 47 Barb. 515; *Sears v. Conover,* 3 Keyes, 113; *Kinsey v. Wallace,* 36 Cal. 462; *Collins v. Council Bluffs,* 35 Iowa, 432; *Black v. Carrollton R. R. Co.* 10 La. Ann. 33; *Mortimer v. Harrell,* 23 id. 165; *Haselmeyer v. McLellan,* 24 id. 629; *Town of Union v. Durkes,* 38 N. J. Law, 21. And see, also, *Boyd v. Brown,* 17 Pick. 453; 20 id. 345; *Hahn's Adm'r v. Sweazea,* 29 Mo. 199; *Watson v. Railroad Co.* 38 Leg. Int. 138; *Branch v. Bass,* 5 Sneed, 366; Hayne's New Trials and Appeals.

The following opinion was filed January 13, 1885:

LYON, J. This action was brought to recover damages for injuries received by the plaintiff, alleged to have been caused by a defect in a gutter at the intersection of certain streets in the defendant city, by reason of which a wagon loaded with hay upon which the plaintiff was riding was overturned, inflicting the injuries complained of. The case has been tried three times. The first trial was had before Judge STEWART, in the Dane county circuit court, and resulted in a verdict for $3,000 in favor of the plaintiff. That court set aside the verdict on the ground that the testimony showed conclusively that the plaintiff was guilty of negligence which contributed directly to the injury.

The place of trial was then changed to the Jefferson county circuit court, and was there tried before the late

Judge CONGER. On that trial the plaintiff had a verdict for $2,500, for which sum judgment was entered against the defendant city. An appeal was taken, and this court reversed such judgment, for the reason that the evidence showed conclusively that the gutter where the accident happened was in proper repair. 56 Wis. 374.

The cause was then remanded, and again tried in the same court before Judge BENNETT, and the trial resulted in a verdict and judgment for the plaintiff for $6,000. This appeal is by the defendant from such judgment.

During the progress of the cause in the circuit court, on the last trial, the court overruled motions on behalf of the defendant for a nonsuit, to direct the jury to find for the defendant, and for a new trial.

The testimony on the last trial is substantially the same as on the second trial, except in relation to the condition of the gutter. The facts proved on the second trial are fully stated in the report of the case in 56 Wis. 374, and will not be repeated here.

On the last trial testimony was given tending to show that there were stones out of the gutter at or near the place where the lower wheel of the plaintiff's wagon went into it, leaving holes therein, some of which were a foot long and six or seven inches deep, and that the gutter had been in that condition for eight or nine months. No such testimony was given on the second trial of the cause. In view of this testimony, which, if true, shows a manifest insufficiency in the gutter, it is clear that the circuit judge was correct in submitting to the jury the question of the sufficiency thereof, notwithstanding the former decision of this court on that subject. As to the alleged contributory negligence of the plaintiff, after a careful examination of the testimony we cannot say that such negligence was conclusively proved. Hence that question, also, was properly submitted to the jury. It follows that the motions for a nonsuit, and that the

jury be directed to find for the defendant, were properly overruled.

The remaining errors assigned are upon the rulings of the court on objections to the admission of testimony; upon the charge of the court to the jury, and the refusal to give certain instructions proposed on behalf of the defendant; upon certain alleged misconduct of plaintiff's attorneys on the trial; and upon the refusal to grant a new trial. These alleged errors will be considered in their order.

I. 1. A witness who had employed the plaintiff upon his farm, both before and after the latter was injured, was allowed, against objection, to testify that the plaintiff's injuries seriously affect his ability to do some kinds of farm labor, and that they incapacitate him from traveling much. We see no valid objection to this testimony. It is not, in any correct sense of the term, the expression of an opinion, but is testimony as to facts within the knowledge of the witness. This testimony, however, was entirely unnecessary. The undisputed evidence shows that the result of the injury to the plaintiff is a stiff ankle, which must remain so during his life, and the jury knew just as well without the testimony that the injury impaired his ability to do general farm labor, or to travel, as they did after the testimony was given.

2. The city surveyor, Capt. Nader, who is a civil engineer by profession, and Mr. Bishop, the street superintendent of the city, were called as witnesses on behalf of the defendant, and, during the examination in chief of each of them, the court ruled that it was incompetent for them to testify as to whether the gutter was in a safe or unsafe, in a good or bad, condition at the time of the accident, but ruled that they might testify fully as to its condition, how it was made, what it was made of, any inequalities in the surface, or any depressions or elevations therein. We perceive no error in this ruling. In *Draper v. Ironton*, 42 Wis. 696, it is said:

"The jury should be left to determine from the evidence of its condition whether the highway is or is not in a reasonably safe condition for travel, and should not be restricted (as they were in the present case) to the mere inquiry whether a certain class of persons may or may not think that accidents are liable to befall ordinarily careful travelers at the place of the alleged insufficiency, and by reason thereof." Although the question there arose upon the instructions of the court, the point of the decision is that the jury must determine whether the highway is safe or unsafe — whether it is in a good or bad condition — from the evidence of its condition, and not from the opinions of any one, whether an expert or not.

3. Capt. Nader made a survey and plat of the streets and gutter at the place of the accident a year and a half after the plaintiff was injured. On his examination in chief, counsel for the defendant propounded to him the following question: " As to unevenness and depressions in the gutter, how did it compare when you made that plat with its condition in December at the time of the accident?" The witness answered: " When I made the survey the gutter, in places, was very uneven, and stone displaced out of line,— some broken and crushed,— and very much out of repair." Later in his direct examination counsel for defendant moved that the words, " and very much out of repair," in the answer of the witness, be stricken out. The court said that the testimony having been given without objection, in answer to the question of the counsel, he would allow the words to stand; but had objection been made immediately when the testimony was given, they would have been stricken out.

When the witness testified that at the time indicated " the gutter, in places, was very uneven, and stone displaced out of line,— some broken and crushed," he testified unmistakably, in substance (although not in terms), that the gutter was then " very much out of repair." The use of the words

objected to was the merest tautology, which could neither mislead nor harm any one. Moreover, the answer of the witness was responsive to the question propounded to him by the counsel. Although not allowed to state in terms that the gutter was in good condition at the time of the accident, he had stated facts showing that it was in good condition, and the question required him to compare its condition at that time with its condition when the survey was made, a year and a half later. Read in the light of his other testimony, the answer was strictly responsive to the interrogatory.

4. Counsel for the plaintiff was allowed, on the cross-examination of Capt. Nader, to ask him if the gutter had been rebuilt since the accident. He answered, "Partly." We do not perceive that the testimony is of much importance, and do not think that any rule governing the cross-examination of a witness was violated by permitting the question to be asked and answered.

This disposes of all the errors assigned upon the rulings of the court on objections to testimony, adversely to the defendant.

II. The court refused to give several instructions asked on behalf of the defendant. These relate to the questions of the negligence of the plaintiff contributing to the accident, the condition and state of repair of the gutter, and the credibility of certain witnesses who, it is alleged, testified differently on the former trials of the cause. The court charged the jury at considerable length on all these subjects. It is unnecessary to set out the proposed instructions or the charge at length. To do so would swell this opinion beyond reasonable and proper limits. It is sufficient to say that, in our opinion, the court charged the jury correctly on all these questions, and that all correct propositions of law material to the case, contained in the proposed instructions, are sufficiently and clearly stated in the charge. The duty of the defendant to maintain its streets in a safe and proper

condition for travel, the obligation of the plaintiff to exercise reasonable caution and care to avoid accident, and the rules for testing the credibility of witnesses, were accurately given by the court to the jury.

III. It is maintained by counsel for defendant that counsel for the plaintiff committed several improprieties on the trial, which bring the case within the rule of *Brown v. Swineford*, 44 Wis. 282, and hence that the judgment ought to be reversed. That rule, as formulated by the late Chief Justice RYAN, is that "it is error sufficient to reverse a judgment, for counsel, against objection, to state facts pertinent to the issue and not in evidence, or to assume *arguendo* such facts to be in the case when they are not. . . . And if counsel persevere in arguing upon pertinent facts not before the jury, or appealing to prejudices foreign to the case in evidence, exception may be taken by the other side, which may be good ground for a new trial, or for a reversal in this court." We are not disposed to question or in any degree weaken the authority of that case. We believe it rests upon sound principles, essential to the due administration of justice, and should not be disturbed. The rule there laid down will be promptly applied to every case fairly within it which may come before this court. Is this such a case?

The charge of misconduct here is made up of several specifications. As to some of them, no objection was made or exception taken. These need not be stated, because they are clearly not within the above rule.

One of the charges is that Mr. Welch, one of the attorneys for the plaintiff, when testifying as a witness, made answer to a question, a portion of which answer was stricken out by the court as improper, and afterwards, in another answer, repeated the objectionable words, which were again stricken out. There is also another specification of the same character. These relate to the conduct of Mr. Welch as a witness, not as counsel. If a witness is guilty of miscon-

duct on the stand, the court should admonish, and, if neces- sary, punish *him* therefor — not the party whose witness he is. The court was not asked to do so in the present case.

The most objectionable remarks made on the trial by counsel for the plaintiff, to which objection was taken, were made in response to an objection to testimony which such counsel was seeking to introduce. He said: "I am careful not to get error into the case. If my client was a rich man, I should like to litigate this matter for the next twenty- five years, and I think it would give me a good support; but my client is poor, and we live in Minneapolis, and every time we come down here it costs him a hundred dollars." The remark that plaintiff was a poor man, and the allusion to the expense of the litigation in connection with that fact, if unproved, would have been improper, not because such state- ment was pertinent to the issue,— for it was not,— but because it might have tended unduly to influence the minds of the jurors in favor of the plaintiff, which, on principle, is as objectionable as prejudice against the defendant. But we think it a fair inference from the testimony that the plaint- iff is not rich. He was a farm laborer, working for others for hire in summer, before and after he was injured, and sometimes taught school in the winter. He had no mechan- ical trade. It is not unreasonable to infer from his condi- tion and employment that he was poor. The rule we are considering does not prohibit a statement by counsel of a fact proved in the case, even though such fact is outside the issue. We perceive nothing else objectionable in what coun- sel then said. The balance of it seems to have been mere harmless pleasantry.

When objection was made to the remarks now being con- sidered, counsel withdrew them, as far as he could do so, by saying that he took them back. We do not think that the consequences of an improper statement by counsel, which comes within the rule of *Brown v. Swineford*, can be so easily

averted. No importance is given to this "taking back" process, and it would scarcely save the judgment had the rule above stated been violated in the first instance.

We conclude that none of the specifications of misconduct by counsel bring the case within the rule of *Brown v. Swineford, supra.*

IV. An alleged error, not before mentioned, will here be briefly noticed. At the commencement of the trial, counsel for the defendant offered to read to the jury, from the reported case, the opinion of this court on the former appeal in respect to the facts. This was objected to, and the court sustained the objection. Such ruling is now assigned as error.

The ruling was correct. The jury must find the facts in any given case from the evidence given to them on the trial, and that alone, and they must take the law of the case from the judge who presides at the trial. The opinions and judgments of this court are for the information and guidance of the trial judge, and the jury have no concern with them only as the judge gives them in his charge.

V. The foregoing observations dispose of all the alleged errors which go to the cause of action, adversely to the defendant. It follows that the judgment cannot properly be disturbed unless this court can say that excessive damages have been awarded to the plaintiff. This brings us to consider the last error assigned — the refusal of the circuit court to set aside the verdict on the ground (among others already disposed of) that the damages were excessive. The plaintiff's injuries are serious. His ankle is stiffened, and he will be a cripple for life. He suffered much pain and lost months of time before he was able to do any work. His ability to labor at his usual avocations, and thus to earn a support for himself and family, is materially lessened. If entitled to recover anything, he is entitled to substantial damages. The jury awarded him $6,000. It has frequently

been said by this court (and is reiterated here) that in a case like this, as a general rule, this court will seldom disturb the award of damages if the testimony will support a finding that the injury complained of will result in serious and permanent disability, such as will incapacitate the injured party for labor, or the pursuit of his business, during the remainder of his life.

Were this the first verdict in the case, in all probability the above rule would be applicable to it. The verdict is not so large as to raise the inference that the jury were controlled or influenced by passion, prejudice, or bias, or any improper motive. But this is not the first verdict. On the trial before Judge STEWART the verdict was for $3,000, and on the trial before Judge CONGER it was for $2,500. The testimony on the second and third trials as to the nature and extent of the plaintiff's injuries was substantially the same. Indeed, the testimony on that subject of Dr. Ward, the surgeon who attended the plaintiff, given on the second trial, was read to the jury on the last trial, pursuant to a stipulation of the parties. Presumably, the same testimony of the extent, character, and probable effects of plaintiff's injuries was given on the first trial, for there is nothing in the testimony preserved in the record tending to show that their serious character was not apparent from the first. Hence, upon substantially the same evidence, we have three verdicts; for $3,000, $2,500, and $6,000, respectively.

It seems to us that this fact ought to take the case out of the general rule above stated, and that the court ought to say that the last verdict is excessive. We adjudge it excessive, not so much because that is our deliberate individual judgment (as it is), but in deference to the verdicts of two juries who awarded but one half, or less than one half, of the sum awarded on the last trial.

The judgment must therefore be reversed on the sole ground that the damages awarded are excessive.

It is our opinion, in view of the former verdicts in this case, as well as upon the merits, that a verdict in excess of $3,500 damages should not be upheld.

It is undoubtedly competent for the trial court, in a case like this, where the damages are excessive, either to grant a new trial absolutely, or give the plaintiff the option to remit the excess, and, in case he does so, order the verdict to stand for the residue. *Corcoran v. Harran*, 55 Wis. 120. In that case, Mr. Justice CASSODAY cites numerous authorities which sustain the proposition.

In *Potter v. C. & N. W. R'y Co.* 22 Wis. 615, it was held, on the authority of certain cases there cited, that this court, on appeal, would not indicate the amount of the excess in such cases, and allow the plaintiff to remit it and take judgment for the residue. That rule has ever since been followed by this court. Now, however, counsel for the plaintiff have submitted an argument, founded upon many adjudications elsewhere, in support of a modification of the rule. It would seem from the cases cited that in many of the states, some of which once held to the rule which prevails here, the appellate courts have adopted the practice of indicating the excess, and of giving, or directing the trial court to give, the plaintiff the option to remit such excess, and allow him to take judgment for the residue. The reasons which have induced the courts to adopt this practice are cogent and satisfactory. They are well illustrated in the present case. The plaintiff has obtained three successive verdicts: the first two upon insufficient, the last upon sufficient, evidence. There is no reason to believe that any future trial will result differently, unless the plaintiff is driven out of court because of inability to continue the litigation. Neither is it at all probable that the recovery will ever be materially less than the sum above indicated. Every lawyer and judge knows that the almost uniform tendency of successive trials in such cases is in the direction of an increase

of damages. Why, then, should there be another trial, if the plaintiff is willing to reduce his damages to the proper sum? What end of justice will be promoted thereby, or what right vindicated? The plaintiff has demonstrated that he has a cause of action against the defendant, and the verdicts of three successive juries enable the court to specify the sum he ought to recover. No error has intervened, except in the last award of damages, and nothing appears to raise a suspicion that any improper motives or feelings on the part of the jurors led to that error. Why, then, if he is willing to remit the excess, should the plaintiff be driven to the delay and expense of another trial to vindicate rights which he has already fully established? We confess our inability to answer these questions adversely to the plaintiff.

The main ground upon which the rule of *Potter v. C. & N. W. R'y Co., supra*, is rested, is that if the court assumes to fix a sum for which the plaintiff may have judgment, it thereby usurps the functions of the jury. See *Nudd v. Wells*, 11 Wis. 407. Certainly, the usurpation is the same if the trial court does the same thing. Yet the right of the trial court to allow the plaintiff to remit the excess, and then give him judgment for the residue, is almost universally recognized, and, so far as we are advised, such has always been the practice in this state. The practice was sanctioned by this court in an action like this in *Corcoran v. Harran, supra*. In the opinion in that case, Mr. Justice CASSODAY shows that this practice, whether in the trial or appellate court, is in the interests of justice in all proper cases, and that it involves no usurpation by the courts of the functions of the jury.

This being really a matter of practice, the maxim *stare decisis* has no application. When satisfied that adherence to any rule of practice will work injustice, the court will change or modify the rule to prevent the wrong, no matter how long it has been observed. All that we now do is to

make the rule of *Potter v. C. & N. W. R'y Co.* sufficiently elastic to enable the court, in a proper case, to relieve the plaintiff from the delay and expense of another trial, when the only fault in the verdict is that it gives him too large an amount. If other material errors have been committed, prejudicial to the defendant, or if there is reasonable ground for belief that the jury were moved by improper motives or led astray by ignorance, or if any other grounds exist satisfactory to the court, a new trial will be ordered.

In the present case the plaintiff's right of action has been established by a verdict which is free from error affecting such right. The jury honestly awarded him too large damages. Other verdicts indicate the sum he ought to recover. We do not hesitate to give him the option to take his judgment for the proper sum, and thus end the litigation.

The cases in this court on the subject under consideration are collated in the briefs of both counsel, and many of those elsewhere in the brief of counsel for the plaintiff. The citations thereto will be preserved in the report of the arguments, and need not be repeated here.

*By the Court.*— The judgment of the circuit court is reversed, and the cause will be remanded with directions that if, within thirty days after the *remittitur* shall be filed in that court, the plaintiff remit $2,500 of the amount awarded by the verdict, judgment shall be entered in his favor on the verdict, for $3,500 and costs. Failing so to remit, there must be another trial.

The costs were taxed in this case by the clerk January 22, 1885. Upon a motion for a retaxation there was oral argument for the respondent by *H. M. Lewis,* and for the appellant by *R. M. Bashford.*

The following opinion was filed March 3, 1885:

LYON, J. This is a motion for a retaxation of costs in this court, based upon objections duly made to the clerk

when the costs were taxed. The objections are to the allowances made for printing case and brief. The amount allowed in the taxation is $187 for the case and $69 for the brief, at the usual rate of one dollar per page. The bill of exceptions seems to be printed in full, and contains 170 pages of testimony, mainly in the form of questions and answers. The charge of the judge to the jury, and instructions asked on behalf of the appellant, filling several pages, are inserted in the brief of appellant. All of these that are material to the errors assigned are subsequently inserted therein. That the printed case has been prepared in entire disregard of rule VIII of this court, is certain. All of the testimony necessary to a full understanding of the errors assigned could have been included in much less than one half the number of pages in the printed case. The respondent is entitled, therefore, to a reduction of the amount of costs taxed by the clerk. *Austin v. Bacon*, 28 Wis. 416; *Butler v. M. & St. P. R'y Co.* id. 487; *Karasich v. Hasbrouck*, id. 569; *Leonard v. Barnum*, 32 Wis. 601; *Paine v. Trumbull*, 33 Wis. 164; *Marsh v. Supervisors*, 42 Wis. 502, 520; *Southmayd v. Watertown F. Ins. Co.* 47 Wis. 517; *Haseltine v. Mosher*, 51 Wis. 443; *Richards v. Waupun*, 59 Wis. 45.

Rule VIII provides that "no costs shall be taxed for printing any case failing to comply with this rule, or so defective as to require reference to the manuscript return." The rule has never been enforced to its full extent, but the court will not hesitate to do so if that shall be found necessary to secure a due observance thereof.

*By the Court.*— The motion for a retaxation is granted, without costs, and the clerk is directed to disallow $100 from the bill as taxed, for excess of printing.