SOUTHMAYD vs. THE WATERTOWN FIRE INSURANCE COMPANY.

CONTRACT. *(1) Termination of employment: proof of employee's consent.* APPEAL TO SUPREME COURT. *Rules as to printed case and brief enforced.*

1. Plaintiff, being perhaps employed by defendant as its state agent for Wisconsin for a term of one year from April 1, 1877, was notified by defendant's vice-president under date December 14, 1877, that, for reasons stated (not implying any dissatisfaction with plaintiff), the directors had concluded that at least for the next calendar year the agency for Wisconsin must be added to the duties of the person who was then defendant's state agent in an adjoining state; and added that defendant's general agent was then in the west, and would probably visit plaintiff in a few days, when " all matters relating to the future " could " be arranged between " him and plaintiff. Plaintiff immediately answered at length, expressing acquiescence in the necessity of the change, and

giving no intimation that he should claim his salary after January 1, 1878. On the 19th of December, 1877, he sent out circulars to defendant's subordinate agents in this state, stating that on the first of January then next, the relations existing between him and them would be dissolved "by expiration of engagement;" and commending to them the state agent who was then to succeed him. *Held*, that these papers show a termination of plaintiff's employment *with his consent;* and he cannot now recover salary for the remainder of the year covered by his contract.

2. A printed case of 255 pp. and a brief for appellant of 134 pp., in this case, being constructed in gross disregard of Rules 8 and 9 of this court, the clerk is directed to allow appellant, in the taxation of costs, for only 50 pp. of case and 25 pp. of brief.

APPEAL from the County Court of *Milwaukee* County.

Action for a sum alleged to be due plaintiff upon his salary as defendant's agent for the three months ending April 1, 1878, amounting to $375. The complaint avers that about May 1, 1877, plaintiff was hired by defendant as its agent to manage its business in this state for one year from April 1, 1877, at the agreed price of $1,500; that he performed all the services pertaining to said employment up to January 1, 1878, when he was discharged by defendant, and prevented from fulfilling his engagement, although he had been ready and willing, etc.

The answer denied that plaintiff was employed for a year or any specific term, and set up certain counterclaims, to which there was a reply in denial.

The plaintiff being a witness in his own behalf, certain letters written to or by him were, on his cross examination, identified by him, and put in evidence by defendant. The contents of these are sufficiently stated in the opinion. At the close of plaintiff's evidence, defendant's motion for a nonsuit was denied.

There was a verdict and judgment for the plaintiff, and defendant appealed.

For the appellant, there was a brief by *Cottrill, Cary & Hanson,* and oral argument by *Mr. Cary.*

For the respondent, there was a brief by *Flanders &
Bottum*, and oral argument by *Mr. Flanders.*

COLE, J.  Assuming that the plaintiff's employment was
for a year from the first day of April, 1877, on the same
terms as stipulated in the original contract, still we think the
evidence shows that this employment was terminated by
mutual consent on the first of January, 1878.  This conclusion
is fully warranted by the letter written the plaintiff by Gilbert,
the vice-president of the company, dated December 14, 1877,
the answer of the plaintiff to that letter, and the circular sent
out by the plaintiff to the agents of the company in Wiscon-
sin, of the 19th of the month.  Gilbert's letter was evidently
written for the purpose of notifying the plaintiff that the
company intended to terminate his state agency at the end of
the year; for he says, in substance, that, as the year draws to
a close, the subject of the business of the company in the
several states comes before the board of directors for discussion
and review; that the past year has been a hard one for insur-
ance business generally; that, owing to the demoralization of
rates, the large shrinkage in values, the increase of fires
and moral risk, the business of the company has been close,
and "brings us all to face the fact that the strictest economy
must be the order of the day;" that, "with that view of the
case, our directors have concluded that Wisconsin would hardly
support a general agency, and that we must add that state to
the duties of Mr. Condit, at least for the year;" states that he
is happy to say that they find their business in Wisconsin in
a much better shape than when plaintiff took charge of the
field; thanks the plaintiff for his faithful performance of all
the duties of his position; assures him that it is only the
necessity which rests upon the company for curtailing expenses
which induces it to make a change; and closes by saying that
" our Mr. Waite is now west," and will probably visit plaint-
iff "some time next week, when all matters relating to the
future can be arranged between you."

To this letter the plaintiff replies at considerable length on the 17th, the day of its receipt, saying: " the proposed change in the management of this agency is not a surprise, for I really anticipated the contents of your letter sooner or later." He further says that while he had spared no pains to increase the volume of business of the company and make it profitable, he was certainly conscious that his efforts were not a success; states various reasons or causes why this was so; says Mr. Condit will find the business in this field much pleasanter than if he had taken it when the plaintiff did; says he will always feel an interest in the "Watertown," which he has defended with too much zeal, and labored for too earnestly, too sincerely and too disinterestedly, not to feel an interest in it; but through the whole letter there is not one word of objection to the termination of the plaintiff's employment at the end of the calendar year, or a single intimation that he should expect or claim his salary beyond that time.

The circulars which were sent out from Milwaukee by the plaintiff to the agents under his supervision, dated December 9, 1877, commence with the following language:

"On the first of January next, the pleasant relations existing for the past two years between the undersigned and the *Watertown Fire Insurance Company* will cease, by expiration of engagement. The Wisconsin department will be consolidated with Iowa and Minnesota, under the management of Mr. E. M. Condit, Anamosa, Iowa. In parting with former officers and agents, and leaving the scene of former labors, the writer would kindly bespeak for his successor in the field— whom you will find a pleasant and efficient officer — such a continuance of the generous courtesy and hearty coöperation for the interest of the ' Watertown ' as has been extended to himself in the past."

This circular was printed and sent out to the agents by the plaintiff immediately after Messrs. Waite and Condit had been to Milwaukee to arrange with him about the surrender of his

agency and the turning over of the books and papers belonging to it. All this business was transacted without any objection on the part of the plaintiff, or claim that the company had no right to discharge him, and that he did not consent to such discharge. Now, if upon reading the letter of Gilbert of the 14th of December, and the reply of the plaintiff thereto, a doubt could remain as to whether or not the parties had mutually consented to a termination of the employment on the first of January, 1878, that doubt would surely be removed by the language of the circular and the conduct of the plaintiff, so far at least as he was concerned; for it would be difficult for him to express more clearly, by act or word, his understanding that his employment or "engagement" with the company ceased at that time.

But it is said that the plaintiff had no option about the surrender of his agency, as the company could deprive him of all authority to act for it at any time, and therefore it ought not to be presumed or inferred, from anything said or done by him, that he intended to waive his claim for his salary for the unexpired balance of the year. But the plaintiff was bound to be frank with the company in his correspondence, and he certainly should have indicated in some way, at the time the matter was under consideration, that he did not voluntarily consent to the termination of his employment before the expiration of the year, if such were the fact. Good faith and open dealing required that he should say that much to the company. But we are entirely satisfied from the evidence that the plaintiff did freely consent to the termination of his agency on the first of January, 1878, and that the claim for salary after that time was an afterthought.

Of course, after the parties had once freely consented to terminate the employment, they were bound by the decision until a new contract was made; for there is no pretense that there was any mistake, imposition or fraud in the matter, both parties having acted understandingly, with full knowledge of

the facts.  So that, without considering any other question on this branch of the case, we hold that the written testimony above referred to clearly shows that the plaintiff voluntarily consented to the termination of his employment by the company on the first of January, 1878, and has no claim for salary after that date.  It follows from these views that the court below should have instructed the jury, as requested by the defendant, that upon the evidence given they must find that the plaintiff had no cause of action.

The testimony in regard to the counterclaims is so unsatisfactory and doubtful that we are unable to decide as to their merits.  Another trial may disclose new facts, and enable the court intelligently to pass upon them.

The printed case contains 255 pages, the testimony being given in the form of questions and answers.  It radically fails to comply with Rule VIII of this court as to what the case should contain.  We think all that was material in the return could have easily been condensed into 50 pages.  The appellant's brief consists of 134 pages.  It gives at length the pleadings, and about 80 pages are taken up with a statement of the facts or testimony.  This is not "a succinct statement of so much of the record as is essential to the questions discussed," as required by Rule IX.  A brief of 25 pages might have been made which would have included all that it was necessary to state therein.

We are not disposed to overlook such a flagrant disregard of the rules in respect to the printing of cases and briefs for this court.  It would lead to great abuse to do so, as the costs of printing would be needlessly increased, and an unnecessary labor imposed upon the judges of this court in examining such uncalled for voluminous briefs and cases.  In the taxation of costs the clerk will allow the appellant only fifty pages for the case and twenty-five pages for the brief, rejecting all the residue.  See *Paine v. Trumbull*, 33 Wis., 164; *Marsh v. Sup'rs*, 42 Wis., 502.

*By the Court.* — The judgment of the county court is reversed, and a new trial ordered.