HASELTINE and another vs. MOSHER and another.

*February 11 — March 2, 1881.*

TAX TITLE: LIMITATION OF ACTION. *(1) What occupancy will interrupt running of statute.*

STATUTORY DAMAGES: *(2) For wrongfully cutting timber on another's land.*

1. During the three years immediately following the record of a tax deed (which was void for irregularity in the tax proceedings), the original owner entered upon the land for the purpose of removing the pine timber; and he

cut roads, built sledways, and cut and hauled the pine from the land, during two successive lumbering seasons of three or four months each, but did not erect any shanty or other structure thereon. Such occupancy was open and continuous during the two seasons; it terminated when the pine timber was all removed; and the land, though fit for agricultural purposes, continued during the whole period to be wild and unimproved. *Held*, that the occupancy was sufficient to interrupt the running of the three-year limitation in favor of the tax-title claimant.

2. Under section 4269, R. S., the measure of damages for wrongfully cutting timber upon the land of another (where no affidavit of mistake is filed as therein provided), is "the highest market value of the logs, timber or lumber, *in whatsoever place, shape or condition*, manufactured or unmanufactured, the same shall have been at any time before the trial, while in possession of the trespasser or any purchaser from him with notice;" and it was error in this case to limit the damages to the highest market value of the "logs, at the saw-mill," before they were sawed into lumber and in that form run to market by defendants.

APPEAL from the Circuit Court for *Wood* County.

This action was commenced May 20, 1876, to recover the value of pine timber alleged to have been, in the years 1871 and 1872, wrongfully cut and removed by the defendants, and disposed of and converted to their own use, from eighty acres of land, being the east half of a quarter section, alleged to be the property of the plaintiffs. The defendant *Mosher*, by separate answer, in addition to denials, alleged in effect that during the time mentioned the title and actual possession of the south forty of the eighty was in himself; and the defendant *Gamble*, by separate answer, in addition to denials, alleged in effect that he and *Mosher* were, during the time mentioned, partners in the lumber business, under the firm name of *Mosher & Gamble;* that just prior to entering into said partnership, *Gamble* purchased of *Mosher* an undivided one-half interest in and to the pine timber standing upon said south forty acres of land, for the purposes of said partnership; and that whatever pine timber said *Mosher & Gamble* had cut or taken from said lands, mentioned in the complaint, was cut and taken from said south forty. They also set up the statutes of limitations.

To the several questions in writing submitted to them, the jury answered, in effect, that the plaintiffs were the original owners of the north forty; and that the defendants cut and removed therefrom 17,000 feet of lumber, board measurement; and that the same was worth five dollars per 1,000 at. the saw-mill on the Eau Claire river; that the plaintiffs claimed title to the south forty by a tax deed dated May 10, 1869, and recorded June 27, 1869, to Marathon county, and by quitclaim deed from Marathon county to the plaintiffs, dated October 1, 1869; that the defendants claimed title to the south forty as grantees of the original owner by warranty deed dated October 18, 1870, and, as such owners, entered upon said south forty November 1, 1871, and began cutting roads, building sledways and cutting and hauling the pine off the land, and continued carrying on such work on said land until April 1, 1872, and then renewed the same in the winter of 1872–73, and finally quit in March, 1873; that said defendants went thereon solely for the purpose of removing the timber therefrom as owners in their business of lumbering, and that the same was done openly and continuously during the logging seasons mentioned, in the usual way lumbermen carry on their logging business, but that they did not erect any shanty or other structure thereon for temporary occupancy after said tax deed was recorded, and they left the occupancy of the land when they had cut and removed the pine timber therefrom; that, "for the three years following the recording of said tax deed, the said south forty was wild and unimproved land, with the soil fit for agricultural purposes;" and that the defendants, during the time alleged, cut 700,000 feet of pine lumber, board measure, from said eighty acres, but that all of it was on the south forty except 17,000 feet, which was cut on the north forty, as stated, and which the jury found to be of the value, with interest to the time of trial, of $121.69.

Plaintiffs thereupon moved for judgment on the whole verdict for the value of all the lumber taken from said eighty,

which was denied. They then moved to set aside the verdict, and for a new trial, on the ground of misdirection of the court to the jury on the subject of damages, and error in refusing instructions thereon requested by the plaintiffs; but this motion was also denied.

There was evidence tending to show that said lumber was sold by the defendants at St. Louis, Missouri, where it was worth, when so sold, from $15 to $18 per 1,000 feet, board measure.

It appears from the record that the defendants' attorneys were not present at the hearing of the motion for a new trial, and that a few days thereafter, on notice of the plaintiffs' attorneys, they offered and consented that said verdict might be set aside, and a new trial had, without costs, upon the grounds mentioned in the motion, so far as the same related to the judge's charge and refusal to charge upon the measure of damages for the timber cut from the north forty. The court charged the jury, among other things, in effect, that if the defendants cut any timber upon the north forty, they were liable for the amount and value thereof at its highest market price, as saw-logs, at the saw-mill upon the Eau Claire river, with interest thereon from the time of the cutting to the verdict, and refused to instruct that they might give the plaintiffs, by way of damages, the highest market price of such lumber while it so remained in the hands of the defendants, between the time of such cutting and the time of trial.

Judgment was rendered in favor of the plaintiffs for $121.69 and the costs; and defendants appealed therefrom.

There are 114 printed pages in the case, of which 84 pages consist of testimony relating largely to the location of the line between the two forties.

For the appellants there was a brief by *James & Crosby*, and oral argument by *Mr. Crosby*.

For the respondents there was a brief by *Silverthorn & Hurley*, and oral argument by *Mr. Hurley*.

CASSODAY, J. Section 32, ch. 22, Laws of 1859, now modified and embodied in section 1187, R. S., provided, among other things, that "no action shall be maintained by the grantee named . . . unless such grantee, or those claiming under him, shall have been in the actual and continual possession of said lands, claiming title under such deed, for three years previous to the expiration of five years next after the date of such deed."

The findings of the jury clearly show that the plaintiffs were not in the actual or continued possession of the south forty during the three years mentioned, but, on the contrary, that such possession was interrupted; that the defendants entered upon the same in November, 1871, and began and continued cutting roads, building sledways and cutting and hauling the pine off of the land, and continued carrying on such work on said land until April 1, 1872; and that the same was renewed during the winter of 1872–3. This is the only kind of actual possession that such lands could conveniently be subjected to.

The method and purpose of the entry, the character and duration of the occupancy and possession of the original owner under the statutes, must necessarily differ with the character and quality of the land, soil, mineral, water, timber, or other growth in, about or upon the land; but the statute, nevertheless, covers all cases which come within its provisions. We are to remember that every tax-title claimant is, for a comparatively trifling consideration paid, seeking, under the authority of the statute and in derogation of the common law, to divest the title of the real owner and transfer it to himself, and hence that he must strictly pursue the statute, or he will fail in his effort. *Potts v. Cooley, ante,* p. 353.

This strictness of construction is especially applicable when the tax-title claimant is seeking to divest the title of the real owner by virtue of a deed confessedly void, on the ground that such real owner is barred by the statute from questioning his

constructive possession under such void deed.    In such case he invokes the statutory bar in order to build up an exclusive right to land, based upon a deed void for non-compliance with the statute.    A strict construction of such a statute, therefore, is in harmony with the ends of justice.

With the right to acquire the land only by a strict compliance with the letter of the statute, he should not object to the interruption of his constructive possession by the physical occupancy of the real and equitable owner, in any way which clearly indicates an assertion of title to the land.    This question has been so often determined by this court, that it is unnecessary to dwell upon it or to cite authorities.

The jury found that 17,000 feet of the lumber were cut by the defendants on the north forty, belonging to the plaintiffs.    There is no claim that any affidavit of mistake was served by the defendants within ten days after the service of the complaint, or at any time, as required by chapter 263, Laws of 1873 (now section 4269, R. S.).    The plaintiffs, therefore, were, under that statute, entitled to "recover as damages the highest market value of such logs, timber or lumber, in whatsoever place, shape or condition, manufactured or unmanufactured, the same" were "between the time of such cutting and the time of the trial of the action, and while it remained in the possession of the" defendants.    The meaning of this statute is plain, and this court must follow it, however harshly it may affect the individual.    *Webber v. Quaw*, 46 Wis., 118; *Ingram v. Rankin*, 47 Wis., 421; *Wright v. Bolles W. W. Co.*, 50 Wis., 167.

It is true, the statute is penal; but there is no more reason for holding that the "highest market value" mentioned in it shall be taken at the mills on the Eau Claire, than at any other place, nor that such "market value" is confined to the "logs," and not to the "lumber" manufactured therefrom, than to claim that it should be confined to the trees on the land at the time of cutting.    The plain meaning of the statute is, that how-

ever much the "logs, timber or lumber," so "wrongfully cut," may have been increased in value by the wrongdoër by changing their shape or condition, or manufacturing them into other articles, or transporting them to distant markets, yet such increase, as well as the original value, shall all enure to the benefit of the real owner. The amount here involved is small, but the statute is equally unbending. This was virtually conceded by the counsel for the respondents in the court below, and they there sought to obviate it by consenting to allow the verdict to be set aside, and a new trial had upon the conditions stated. But the appellants had the privilege of standing upon their legal rights, and, with their view of the law upon the other question, it was very proper for them to do so.

Rule VIII of this court requires the appellant to make and print a case, consisting of a sufficient statement of the return of the court below, numbered throughout by folios on the outer margin of the page, and provides that no costs shall be taxed for printing any case failing to comply with this rule, or so defective as to require reference to the manuscript return. The objection here made to the printed case is, that it is altogether too voluminous. It is an objection which might, with propriety, be made far more frequently than it is; and we therefore take this occasion to refer to a general tendency to go beyond the spirit of the rules in printing cases, and the "succinct statement of so much of the record as is essential to the questions discussed," in the briefs. Where the case is tried by a jury, and there is no question involving the weight and sufficiency of evidence, there is no necessity for printing it *in extenso*. In such cases, a brief statement that there was or was not evidence tending to prove or disprove the several facts in issue, is all that is essential to determine whether the law has or has not been properly applied. Such statement in such cases is a "sufficient statement" within the meaning of the rule. The printed case should only present so much of the record as is essential to fully understand all the questions in-

volved. The habit of some attorneys, in printing not only all the testimony but the contents of all the papers in the case, is unnecessarily expensive to parties, besides being unnecessarily burdensome to the court. We apprehend it frequently occurs through a misapprehension of the rules. With excessievly voluminous records, it frequently takes as much time to determine what portion has not, as to determine what portion has, an application to the points involved. In some cases the "statement of so much of the record as is essential to the questions discussed," in the briefs, instead of being "a *succinct* statement," as required by rule IX, is a reprint of a large portion of an excessively voluminous printed case. Here the briefs are not objectionable, but the case is subject to the criticism of the present chief justice in *Southmayd v. Ins. Co.*, 47 Wis., 522. In taxing the costs of this court, therefore, the court will only allow for fifty pages of the printed case.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.