'BEFAY and another, Appellants, vs. WHEELER, Respondent.

*December 12, 1892 — January 10, 1893.*

| 84 | 135 |
| 88 | 274 |

*Wrongful cutting of timber: Measure of damages: Claim of title: Good faith: Evidence: New trial.*

1. The word "title," as used in ch. 239, Laws of 1882 (providing, in effect, that in an action for the wrongful cutting of timber, if the defendant shall have in good faith acquired a title to the land and shall have cut the timber therefrom believing such title to be valid, the recovery shall be limited to actual damages), means a title apparently good, but which for some reason is invalid.

Befay and another vs. Wheeler.

2. A receipt from the receiver of the land office, showing the purchase of the land by the defendant, is such a title, although the land was afterwards selected and patented to the state under the swamp-land grant act of Congress, and defendant's entry thereof canceled. *Smith v. Morgan*, 68 Wis. 363, distinguished.

3. The question being as to defendant's good faith and belief in his title, recitals in letters written by the United States land commissioner to the register of the land office, to the effect that the latter had reported due notice given to defendant that the entry of the land in question had been held for cancellation because appearing to conflict with the claim of the state under the swamp-land grant act, are not proof that such notice was given.

4. There is no presumption that the register gave such notice to defendant because it was his duty so to do, when the defendant testifies positively that no such notice was given.

5. Evidence that the land was swampy at a time long after the rights of the parties were fixed, is inadmissible on the question of good faith. [Whether evidence of the actual condition of the land at any time would be admissible upon that question, not determined.]

6. The answer alleged that the value of the timber cut did not exceed $2 per thousand feet. On the trial no objection was made to evidence showing the value to have been much less, and plaintiffs' judgment was for a less sum. *Held*, that it cannot be objected for the first time on appeal that such judgment was erroneous because contrary to an admission in the answer.

7. The answer having alleged that defendant cut the timber in good faith, believing his title to be valid, a new trial should not be granted to plaintiffs on the ground that after the trial they discovered that the register of the land office would have testified that, before the cutting, he did in fact notify defendant of the cancellation of his entry, where there had been nothing to prevent them from ascertaining that fact before the trial.

APPEAL from the Circuit Court for *Winnebago* County.

The action was brought to recover the highest market value of pine timber cut by defendant on two forty-acre tracts of land in Florence county. The complaint alleged that said lands belonged to the state of Wisconsin on and prior to October 2, 1887, and were on that day purchased by the plaintiffs, who received a patent therefor from the state, and ever since have been the owners thereof; that

at various times in the years 1884, 1885, 1886, and 1887 the defendant entered on said lands, and cut and removed 655,839 feet of pine timber, unlawfully, and without the consent of the commissioners of public lands of the state. Judgment was demanded for the highest market value of said timber, alleged to be $12 per 1,000 feet.

The answer, after denying knowledge or information as to the plaintiffs' title, alleged that in June, 1881, the defendant entered said lands at the United States land office at Menasha, and received the proper certificate of entry therefor, and that thereafter, and prior to April 1, 1886, he cut and removed timber therefrom to the amount of 450,000 feet, and no more, not exceeding in value $2 per 1,000, and that he cut the same in good faith, believing himself to be the owner thereof under his certificate of entry.

It appeared upon the trial that the defendant entered the lands, with others, at the United States land office at Menasha, in June, 1881, paid the purchase price, and received the proper receipt from the receiver therefor; the lands then appearing upon the books and plat of the land office to be subject to entry and sale.

It further appeared that in April, 1886, the state of Wisconsin selected these lands, with others, as swamp lands inuring to the state under the act of Congress approved September 28, 1850, which selection was approved by the secretary of the interior April 10, 1886, and that in January, 1887, the United States patented said lands so selected, including the lands in suit, to the state. The state conveyed the lands in question to plaintiffs by patent in November, 1887. In June, 1882, the commissioner of the general land office notified the register and receiver at Menasha that the entries of the two forties in question, made by *Wheeler*, were held for cancellation, as conflicting with the swamp-land grant to the state, and directed the

register to notify *Wheeler* of the fact. In June and July, 1885, the commissioner then acting canceled said entries, and notified the register at Menasha of the fact, and directed him to advise the party in interest. No direct proof was given of any notification to *Wheeler* of either of these decisions, and *Wheeler* testified positively that he never received any notice of either of the decisions, or that there was any trouble of any kind with his entry, until August, 1887, when he immediately made application for the refund of his purchase money, and received the same. The defendant substantially abandoned on the trial any claim that he was the rightful owner of the lands in question, and claimed that he cut the timber in good faith, believing that he had a good title.

There was little dispute as to the amount of timber cut, but there was considerable dispute as to the value of the stumpage and of the logs. The cutting was done during three seasons, to wit, the season of 1884–85, the season of 1885–86 and the season of 1886–87.

The jury found, by special verdict, that the defendant cut and removed 397,528 feet of timber from one forty, the stumpage value whereof was $1 per 1,000, and the highest market value $6.50 per 1,000; that he cut and removed from the other forty 216,728 feet, at a stumpage value of $1.50 per 1,000, the highest market value being $7.50 per 1,000; that defendant acquired his title and cut the timber in good faith, believing that he had a good title.

The plaintiffs moved for a new trial for errors in admission and exclusion of evidence and in giving and refusing instructions, which being overruled they moved again, upon affidavits claiming to show newly discovered evidence. This motion was also overruled, and judgment was entered for $962.93 in favor of plaintiffs; being the stumpage value of the timber cut, with interest. From this judgment plaintiffs appealed.

Befay and another vs. Wheeler.

For the appellants there was a brief by *Wigman & Martin,* and oral argument by *J. H. M. Wigman.* They contended, *inter alia,* that the title to the land in question was vested in the state by the act of Congress of September 28, 1850. That act was a grant *in præsenti. Railroad Co. v. Smith,* 9 Wall. 95; *French v. Fyan,* 93 U. S. 169; *Martin v. Marks,* 97 id. 345; *Rice v. S. C. & St. P. R. Co.* 110 id. 697; *Buena Vista Co. v. I. F. & S. C. R. Co.* 112 id. 176; *Wright v. Roseberry,* 121 id. 495; *U. S. v. Louisiana,* 123 id. 37; *Irwin v. San Francisco S. U.* 136 id. 578; *Tubbs v. Wilhoit,* 138 id. 134; *Nall v. California,* 2 Copp, Pub. Land Laws, 1048. The defendant being chargeable with knowledge of what the law was, and that the title to the land was in the state when he trespassed thereon, did so at his peril, and cannot claim that he acquired a title to the lands, or that he entered upon the lands in good faith believing that his title was valid. In no event can he avail himself of ch. 239, Laws of 1882, for that chapter does not restrict the prerogative rights, title, or interest which the state had at the time in the land or timber. *Harlock v. Jackson,* 1 Tread. (S. C.), 135; *State ex rel. Pearesons v. Arledge,* 2 Bailey (S. C.), 401; *U. S. v. Herron,* 20 Wall. 251; *U. S. v. Hoar,* 2 Mason, 314; *Savings Bank v. U. S.* 19 Wall. 239; *Smith v. Morgan,* 68 Wis. 363; Potter's Dwarris, Stat. 151–2. The register was required to notify defendant that his entry was held for cancellation, and it must be presumed that he performed his duty. *Hartwell v. Root,* 19 Johns. 345; *Drake v. Mooney,* 31 Vt. 617; *Lincoln v. French,* 105 U. S. 614; *Gonzales v. Ross,* 120 id. 605; *Campbell v. Laclede G. Co.* 119 id. 445; *U. S. v. Weed,* 5 Wall. 62; *Wallace v. Maxwell,* 1 J. J. Marshall (Ky.), 447; *Hickman v. Boffman,* Hardin (Ky.), 362; *Squier v. Stockton,* 5 La. Ann. 120, 52 Am. Dec. 583; *Dubuc v. Voss,* 19 La. Ann. 210, 92 Am. Dec. 526; *State ex rel. Willis v. Prince,* 45 Wis. 613; *Mills v. Johnson,* 17 id. 598; *Green Bay &*

*M. C. Co. v. Outagamie Co.* 76 id. 587; *Tainter v. Lucas,* 29 id. 375; *State v. Freeman,* 8 Iowa, 428; *Comm. ex rel. Bowman v. Slifer,* 25 Pa. St. 23, 64 Am. Dec. 680; Broom, Leg. Max. 912; *Bank of U. S. v. Dandridge,* 12 Wheat. 69, 70.

For the respondent there was a brief by *Silas Bullard,* attorney, and *Gabe Bouck,* of counsel, and oral argument by *Mr. Bouck.*

WINSLOW, J.   Really the only issue litigated was as to the amount of damages to which plaintiffs were entitled. The defendant on the trial did not claim that he ever possessed a valid title to the lands in question, but he claimed that he cut the timber therefrom under a title acquired in good faith, which he believed to be good.   If this was the case, the value of the stumpage is all that could be recovered by the plaintiffs.   If it was not the case, the highest market value of the timber at any time while in the defendant's possession might be recovered as damages.   R. S. sec. 4269, as amended by ch. 239, Laws of 1882.   It is manifest that the word "title," as used in ch. 239, just cited, does not mean a valid title in fee, for, if the defendant had that, then there could be no recovery against him; but it must mean a title apparently good, but which in fact, for some reason, is invalid.   The register's receipt, which the defendant held, showing his purchase of the lands in question, was a title which apparently vested in him the entire equitable and beneficial interest in the land.   *Farnham v. Sherry,* 71 Wis. 568.   This title was apparently a good title, but not in fact a good title, because the lands in question were afterwards selected by the proper authorities as swamp lands, and thus it was conclusively determined that the title thereto passed from the United States to the state upon the passage of the swamp-land grant act of September 28, 1850; it being settled that the provisions of that

act constituted a grant *in præsenti*. *French v. Fyan*, 93 U. S. 169; *Wright v. Roseberry*, 121 U. S. 495. This being the case, if the defendant acquired this defective title in good faith, and cut the timber while he still believed his title to be good, he is entitled to the protection given him by the statute. The case of *Smith v. Morgan*, 68 Wis. 363, cited by appellants, is clearly unlike the present case. There the title under which the defendant claimed to have cut timber in good faith was a school-land certificate, which under the law did not confer any right to the holder to cut timber, and so, plainly, could not be a title under which defendant could cut timber in good faith.

Upon this question of good faith and belief in his title, the defendant testified, directly and positively, that he made his entry of the lands, and that he cut the timber in entire good faith, believing that he had an absolute title, and that he had no notice of any defect in his title, or of any proposed cancellation of his entry, until August, 1887. There is absolutely no direct testimony in the case to the contrary. But the plaintiffs claimed that certain recitals in two letters written by the United States land commissioner to the register of the land office at Menasha constituted some proof that the register gave notice to the defendant in the year 1883 that his entry of the lands had been held for cancellation. These recitals so relied upon appear in letters which were introduced in evidence, and which were dated in June and July, 1885. They are to the effect that the register reported in March, 1883, due notice given to the party in interest that the entries of the lands in question had been held for cancellation because appearing to conflict with the claim of the state under the swamp-land grant act. The circuit judge instructed the jury that these recitals constituted no proof of notice to the defendant. This instruction was clearly right. Whatever might be said of a statement by the land commissioner himself in

Befay and another vs. Wheeler.

an official communication concerning his own acts or facts within his personal knowledge, it is very clear that, when he states simply what another official has previously stated to him, such a recital cannot rise to the dignity of proof of that fact. It is simply hearsay.

But the plaintiffs insist that there is a presumption that the register at Menasha did his duty, and informed the defendant that the entries were held for cancellation, as he had been directed by the land commissioner to do; and they rely upon the familiar rule that all reasonable presumptions must be made in favor of the regularity and validity of the action of public officers and tribunals. This rule is well established, but it does not appear to be applicable under the present circumstances. It is a mere presumption of law, which operates only in case of absence of evidence. It disappears entirely in the presence of positive, uncontradicted evidence upon the subject; and, furthermore, it seems very doubtful whether any presumption could be indulged here that the register gave the notice in question. In *U. S. v. Ross*, 92 U. S. 281, it is said by the court, quoting from Best, Ev. § 300: "The true principle intended to be asserted by the rule seems to be that there is a general disposition in courts of justice to uphold judicial and other acts, rather than to render them inoperative, and with this view, where there is general evidence of acts having been legally and regularly done, to dispense with proof of circumstances, strictly speaking, essential to the validity of those acts, and by which they were probably accompanied in most instances, although in others the assumption may rest on grounds of public policy. *Nowhere is the presumption held to be a substitute for proof of an independent and material fact.*" This notice was certainly, in the present case, an independent and material fact. It was not an incidental circumstance attending, or which should have attended, some act of the register already

proven.  We think, therefore, that the circuit judge was right in refusing to instruct the jury that there was a presumption that the notice had been given.

Further, on this question of good faith, the plaintiffs offered to show, by a witness who went upon the land in January, 1891, that a part of the land appeared at that time to be swampy.  This testimony was rejected by the court.  In *Railroad Co. v. Smith*, 9 Wall. 95, oral proof that lands were swampy in 1850, at the time of the passage of the swamp-land grant act, was held admissible in support of a title derived from the state, because the secretary of the interior had neglected to select the lands which inured to the state as swamp lands under the act of 1850. But no such question as that arises here, nor was the proof offered of any such nature.  The proof here offered was as to the condition of the land in January, 1891, forty years after the grant to the state, and nearly ten years after the defendant's entry.  If proof of the actual condition of the land is admissible at all on the mere question of good faith (which we do not decide), the testimony here given was clearly inadmissible, because it related to a time long after the rights of the parties were fixed.  We do not know what topographical changes may have taken place in the land, nor do we know what exceptional temporary conditions may have existed in January, 1891.  *Connors v. Meservey*, 76 Iowa, 691.  We conclude that there was no error in refusing to receive this testimony.

It is claimed by appellants that the answer admits that the stumpage value of the timber cut was $2 per 1,000, and thus that the judgment is for too small a sum, in any event. The answer states that "the value of the timber cut did not exceed two dollars per thousand feet."  Construing this as an admission that the value was at least $2 per 1,000, still we think there is no error of which the appel-

lants can now take advantage. The defendant introduced much testimony, without objection on the part of appellants, tending to show that the stumpage value was not to exceed $1 per 1,000. The question was fully litigated, as though it were an open one, and no objection was made. The point cannot be made for the first time in this court.

A motion for a new trial was made by the plaintiffs, based on affidavits which were claimed to show newly discovered evidence and that the plaintiffs were the victims of surprise upon the trial. The affidavits relied upon were those of Mr. Fay, register of the land office at Menasha from 1875 to 1887, and of the plaintiff *Befay*. From these affidavits it appeared, substantially, that the plaintiff *Befay* had conversations with *Wheeler* before the trial, and was led to believe that *Wheeler* knew in 1885 that the lands in question were swamp lands, and that the plaintiff was therefore surprised at the trial when *Wheeler* testified that he had received no notice of the fact; that the register, Fay, was confined to his bed at the time of the trial, and could not be present, although the plaintiffs tried to secure his presence; that, if present, he would have testified that he did in fact notify *Wheeler* of the cancellation of his entry; and that *Befay* did not know that he would so testify until after the trial. These affidavits were clearly insufficient. The plaintiffs knew that the claim of defendant was that the timber was cut in good faith, and that they must be prepared to meet that claim on the trial, under the pleadings. They also knew before the trial, from the letters which they themselves introduced in evidence, that Fay had reported that he had given notice to the parties in interest; and under these circumstances the plaintiffs certainly ought to have prepared themselves for trial by inquiring of Fay what he had done, and by taking his deposition, if necessary. The affidavits show neglect to pre-

pare for trial, rather than a proper case of surprise or newly discovered evidence.

We find no error in the record, and the judgment must be affirmed.

*By the Court.*— Judgment affirmed.