PETTINGILL and another, Appellants, vs. GOULET, Respondent.

*November 28—December 15, 1908.*

*Replevin: "Timber:" Trespass: Measure of recovery.*

Trees felled and cut into cordwood by a trespasser, which had attained such size as, in the use of forest products, to be commonly regarded as timber suitable for manufacture into a marketable product, are within the calls of sec. 4269, Stats. (1898), providing the rule for assessment of damages for wrongfully cutting timber.

APPEAL from a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Reversed.*

This is an action in replevin to recover possession of certain railroad ties and cordwood. The answer was a general denial. The sheriff seized forty cords of the wood; the defendant gave a redelivery bond, and this property was returned to him. The evidence showed that the wood was cut by the defendant from the plaintiffs' land. The defendant offered to permit plaintiffs to take judgment for the sum of $50 and costs. By direction of the court the jury found that the plaintiffs were entitled to the goods described in the complaint and that the defendant unjustly took and unlawfully detained the same. The question of value was covered by three findings in the verdict:

"(3) That the total value of said ties cut from timber upon plaintiffs' land is the sum of $16.60. (4) That the total value of the maple, oak, and birch cordwood stumpage before the same was cut by the defendant was $10.75. (5) That the value of said maple, oak, and birch firewood or cordwood was $140.50 after the same was cut."

Appellants objected to the admission of evidence of the stumpage value of the cordwood, and excepted to the ruling of the court in submitting this question to the jury. The court denied plaintiffs' motion for judgment for the value of

the wood after it had been cut by the defendant, and ordered judgment in plaintiffs' favor for the value of the ties, together with the stumpage value of the cordwood before it was cut, with costs up to the time of defendant's offer of judgment. This is an appeal from the judgment so ordered.

The cause was submitted for the appellants on the brief of *C. F. Morris,* and for the respondent on a brief signed by *Ernest Sauve,* attorney, and *A. W. McLeod,* of counsel.

SIEBECKER, J. It is claimed that the court erred in restricting the damages caused by the felling and the removal of the trees, which were cut into cordwood, to their stumpage value, and in not holding that the value of the product of these trees, in the form of cordwood at the time it was replevied, was the true measure of damages. No exemplary damages are claimed, but it is urged that plaintiffs are entitled to have their damages assessed under the statutory rule declared in sec. 4269, Stats. (1898). This section provides that: "In all actions to recover the possession or value of logs, timber or lumber wrongfully cut upon the land of the plaintiff or to recover damages for such trespass the highest market value of such logs, timber or lumber," etc., shall be awarded the plaintiff. The words "logs, timber or lumber" must be understood as the legislature intended to apply them in view of the mischief sought to be remedied. This court in *Single v. Schneider,* 30 Wis. 570, held that, in replevin to recover the value of logs wrongfully cut and taken from plaintiff's land, the measure of recovery was the value of the property before it was improved by the defendant's labor and skill, unless the taking was accompanied by circumstances which justified the imposition of exemplary damages. At the next session of the legislature after the decision an act was passed which is substantially embodied in the present sec. 4269, Stats. 1898 (*Tuttle v. Wilson,* 52 Wis. 643, 9 N. W. 822), and which radically changed the

measure of damages in actions to recover the possession or value of logs, timber, or lumber wrongfully cut upon plaintiff's land or for the recovery of damages for such trespass. In the instant case the trial court held that plaintiffs were not entitled to the measure of damages provided by this statute for the trees converted into cordwood, and therefore awarded recovery only for the stumpage value of the trees so felled and converted into cordwood.

The evidence discloses that the trees so felled and cut into cordwood had attained the size of trees which, in the use of forest products, are commonly regarded as timber suitable for manufacture into a marketable product. We are persuaded that the legislature intended that such trees, when wrongfully cut and removed, should be deemed within sec. 4269, Stats. (1898), and also intended by this section to grant the owner of them the right to recover the measure of damages provided therein, regardless of the condition into which they might have been converted by the trespasser. We perceive no good reason why the cordwood made from such trees should not be embraced within the statute. This application of the statute operates to accomplish the purposes of the law, and affords no more than a just relief to persons whose timber has been wrongfully felled and removed from their lands. Upon these considerations we are of opinion that plaintiffs were entitled, under the facts of this case, to recover the highest market value of the cordwood so cut out of such timber. This the jury found to be $140.50. Such measure of damages was applied in the following cases: *Brewster v. Carmichael,* 39 Wis. 456; *Haseltine v. Mosher,* 51 Wis. 443, 8 N. W. 273; *Gerhardt v. Swaty,* 57 Wis. 24, 14 N. W. 851.

The verdict of the jury specially finds the amount plaintiffs are entitled to recover under this statutory rule, hence no retrial of the action need be had. Judgment for the amount so found should have been awarded plaintiffs instead

of the lesser sum found by the jury to be the stumpage value
of the trees so converted.

*By the Court.*—The judgment is reversed, and the cause
remanded to the trial court with directions to enter judg-
ment in accordance with this opinion.

MARSHALL, J. (*concurring*). The question presented on
this appeal is interesting and important to the administration
of justice. A full history of the subject will demonstrate
correctness of the construction now given to the statute.
Wishing only to emphasize such correctness I write this sup-
plementary opinion.

Quite early the rule was adopted here that in an action to
recover for wood wrongfully taken at one place and removed
to another, materially enhancing its value, the measure of
recovery was the value at the time of taking, the question be-
ing reserved as to whether it would be the same in case of a
wrongful taking by design. In the circumstances of the
case it was held that full reparation was awarded the owner
by such value, saving to the wrongdoer the added element
representing his labor. *Weymouth v. C. & N. W. R. Co.*
17 Wis. 550. Later that was extended to an action for re-
plevin for possession of logs made from trees wrongfully re-
moved from plaintiff's land by the defendant (*Single v.
Schneider,* 24 Wis. 299), where a return of the property
could not be had, the question as to wilful trespasses being
still reserved. In *Hungerford v. Redford,* 29 Wis. 345, that
was affirmed. The evolution of the doctrine culminated in
*Single v. Schneider,* 30 Wis. 570, extending it to wilful cut-
ting and taking of timber. That was without precedent or
logical support, in the judgment of the writer. I cannot
believe that it would receive any favor now if the matter
was open for original treatment.

That *Single v. Schneider, supra,* created an exceedingly
embarrassing situation for owners of land in the great timber

region of the state,—where in the very nature of things to prevent stealing of timber, which was common and profitable, was impracticable,—must be evident. It operated as a great stimulus to very annoying and damaging invasions of property rights. The novel rule was very beneficial to lawbreakers and very disadvantageous to owners of the wild and unoccupied land of the state.

As might have been expected, at the first opportunity the legislature was successfully invoked to provide some remedy for the condition described, resulting in ch. 263, Laws of 1873, to the effect that, as to wilful trespasses,—regardless of whether the remedial action was trespass, trover, or replevin to recover for logs, timber, or lumber cut from the land of the plaintiff, unless the property should be restored to the owner,—the damages should be "the highest market value of such logs, timber or lumber, in whatsoever place, shape or condition, manufactured or unmanufactured," the same might be prior to the time of the trial.

It will be seen, at once, that the law, while very comprehensive, was yet quite ambiguous. Neither timber, logs, nor lumber, strictly speaking, is cut from land. Timber, in the sense of standing trees, is cut from land by severing the same therefrom. Logs are made from timber cut from land. Timber, in one sense, is the manufactured product of trees, but is commonly referred to as a part of the land. So the cutting of lumber from land is the cutting of trees therefrom. Lumber is made from logs, made from fallen timber, and in turn many things are made, directly or indirectly, therefrom.

So in the broad sense the law covered all products made by various methods of manufacture from trees, or timber cut from land. Only by giving that broad construction could the real mischief of the condition created by *Single v. Schneider, supra,* be removed. The clause, seeming to contemplate a restoration of the products of trees as a condition

of escaping the penal rule of damages, left it uncertain as to whether the statutory rule of damages was absolute.

In that condition the revisers of 1878, endeavoring to clear up uncertainties, eliminated the restoration clause and changed the words "cut from" to "cut upon," making this explanation: "rewritten with an effort to state with more clearness and brevity the rules there prescribed." Note the language, "with an effort," indicating uncertainty as to whether the change did not yet leave the law ambiguous, which was well grounded, in my opinion. The uncertainty as to whether money damages should be the sole measure of redress was removed. The substitution of "cut upon" for "cut from" made it clear that the law covered the taking of down as well as standing timber, which was important, since there were large districts in the northern part of the state where valuable timber lay upon the ground as cast there by wind storms. But while the substitution cured one uncertainty it intensified another. Though, strictly speaking, timber in the sense of products of trees is not cut from land, a fortiori it is not commonly cut upon land where the raw material, the trees, are found. So the meaning as before is evidently logs, lumber, or timber, or the manufactured products obtained from land. The term "cut upon" with its context renders all the products referable to trees, whether standing or fallen, forming a part of the realty till disturbed by the trespasser. The words "whatsoever place, shape or condition" used to expand the term "logs, timber or lumber," followed by the words "manufactured or unmanufactured," makes it quite plain that all products of timber as of the time of the wrongful disturbance were intended, whether such products be in the form of saw logs, square timber, any species of lumber, cordwood, railroad ties, pulpwood, or any of many other things that might be mentioned.

That construction fully meets the mischief intended to be obviated and makes the statute a reasonable, sensible enactment. To take the statute literally would give it an un-

reasonable and quite absurd meaning. The statutory rule would not apply in case of the severance of trees from the land and removal and use without changing the form. It would reach the trespasser if he converted the trees removed, into saw logs, timber, or lumber, upon the land. If he converted the trees into cordwood, railroad ties, pulpwood, stave bolts, fence rails, or any other of the many things that might be mentioned, it would not. The trees above the usable part for saw logs or timber, regardless of its value, would not be within the rule. In short, in case of a wilful trespass by the cutting down and removal of trees from land, though the damage to the owner would be unaffected by the use the trees might be put to, his rule of damages would be contingent upon the choice of the trespasser in that regard. It seems that no such unreasonable condition could ever have been thought of.

This court on the first occasion for dealing with the statute, as the revisers well knew at the time of their action, regarded it as above indicated. That is shown by *Webster v. Moe*, 35 Wis. 75, an action to recover for the value of trees wrongfully cut from plaintiff's land. Whether the trees were by the wrongdoer converted into saw logs, or cordwood, or some other product, does not definitely appear from the printed report of the case, or from the printed matter used on the appeal. The indications are, that was regarded as immaterial, as the law of 1873, if applicable at all, covered the taking of trees or any of the products thereof. Justice COLE, who wrote the opinion in *Single v. Schneider*, 30 Wis. 570, speaking for the court, said:

"The action was for a trespass in cutting down and removing pine trees," etc. . . . "But as soon as the decision in *Single v. Schneider* became known, the legislature passed ch. 263, Laws of 1873, prescribing what should be the measure of damages for the wrongful cutting of timber [trees]," and changed "the rule laid down in that case." *Webster v. Moe*, 35 Wis. 77, 79.

Manifestly, the word "timber" in the quoted language

means the same as that word in the law and refers to trees. So the wrongful cutting of timber upon land looks to the severance of trees large enough to be called standing timber. The law was primarily aimed at such wrongful cutting of a wilful character, and secondarily to whatever product the trees might be manufactured into prior to the trial of the action.

Subsequent to the decision referred to the law was twice amended but not so as to affect the feature we have discussed (ch. 239, Laws of 1882, ch. 95, Laws of 1889), and it is now sec. 4269, Stats. (1898). It has been involved in numerous cases decided here without any suggestion being made out of harmony with what has been said. *Brewster v. Carmichael,* 39 Wis. 456; *Webber v. Quaw,* 46 Wis. 118, 49 N. W. 830; *Wright v. E. E. Bolles W. W. Co.* 50 Wis. 167, 6 N. W. 508; *Tuttle v. Wilson,* 52 Wis. 643, 9 N. W. 822; *Smith v. Briggs,* 64 Wis. 497, 25 N. W. 558; *Smith v. Champagne,* 72 Wis. 480, 40 N. W. 398; *Fisher v. Schuri,* 73 Wis. 370, 41 N. W. 527; *Everett v. Gores,* 89 Wis. 421, 62 N. W. 82; *Befay v. Wheeler,* 84 Wis. 135, 53 N. W. 1121.

BARNES, J. I concur in the foregoing opinion of Mr. Justice MARSHALL.